No. 22,457.

C. WILKINS, *Appellee,* v. C. A. DIVEN, *Appellant.*

SYLLABUS BY THE COURT.

EASEMENT—*Access to and Use of Well Water—Equities—Damages—Injunction.* In a growing, developing urban community, an implied easement or *quasi* easement will not be preserved nor reëstablished by the aid of an injunction, when the owner of the dominant estate to which the easement was appurtenant is not seriously injured by being deprived of it. He will be remanded to seek legal redress in damages.

Appeal from Franklin district court; CHARLES A. SMART, judge. Opinion filed February 7, 1920. Affirmed in part and reversed in part.

*H. M. Funston,* and *W. B. Pleasant,* both of Ottawa, for the appellant.

*W. S. Jenks,* of Ottawa, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: This appeal concerns the rights of an owner of property in a certain easement or *quasi* easement created by his grantor.

The plaintiff, Wilkins, formerly owned three and a fraction lots in the city of Ottawa. The lots lay east and west immediately south of Second street. He had an old house near the west end of these lots, and in the basement or cellar of the old house he had an excellent well of water. Afterwards, the plaintiff built a ten-room house on the east half of these

lots, fronting on Second street, and on the halfway line of these lots he dug a pit six feet deep, and made a platform over it, and placed thereon a two-way pump to draw water through a pipe laid underground to the well under the old house, and also to force the water by an underground pipe into the basement of his new house, thus furnishing the latter house with a water supply. To all appearance the pump and curb at the middle of the lots was an ordinary well running straight down to the water level. When the new house was erected the plaintiff moved into it and occupied it for some time, and eventually sold it to Guy Z. Price. Price did not occupy it himself. He rented it for a few months, and then sold it to the appellant. Price had no notice of the subsurface structure of the well, and neither had the appellant at the time he bought the property. Price testified that the plaintiff had told him it was a partnership well, and that he did not tear up the platform to see what was below it.

"I bought it as a well—a partnership well. . . . I did not dig under the pump and had absolutely no notion that the pipe run off on his lots and connected over there. I never knew of any of that until this winter. I never suspected I had any right to go over on his lots."

Some time after appellant acquired the property, the well needed to be cleaned, and the facts as to the well and its arrangement were then disclosed to appellant. The expense of cleaning the well had to be met, at which time plaintiff paid half and appellant paid half of that expense.

Later, the plaintiff determined to erect a new house fronting on Second street on the west half of the lots which he yet owned, and accordingly he demolished the old house, cut off and removed the pipe in the well which fed the pump at the line between plaintiff's and appellant's properties. He also walled up the well to the level of the ground.

This, of course, cut off appellant's supply of well water, so he commenced to dig westward across plaintiff's half of the lots to repair and restore the connection with the well. Hence this lawsuit.

Plaintiff sued for an injunction. The appellant pleaded the facts, alleged damages, prayed for an adjudication of his right to use the water, and of his right of access over plaintiff's property to maintain his system of water supply in repair, and

Wilkins v. Diven.

for a mandate requiring plaintiff to restore the water connection, etc.

Before the plaintiff sold the east half of the lots to Price, the city of Ottawa had laid water pipes on Second street, and the appellant's house was connected with and adequately supplied thereby, except for cool, refreshing drinking water in the summer time, such as was furnished by the well.

The court gave judgment for plaintiff and enjoined the appellant from meddling with or trespassing upon the property on plaintiff's side of the division line.

The appellant cites plenty of good law to the effect that when plaintiff laid the pipe from his well to the pump at the median line of the lots to furnish a water supply for the property which he afterwards sold to appellant's grantor, the plaintiff thereby knowingly and voluntarily subjected the west half of his lots to a necessary, *quasi* easement which he could not with impunity remove or terminate without the consent of his grantee or those holding under his grantee by deed of general warranty. (14 Cyc. 1166-1172; 9 R. C. L. 754, 763, 764; Note, 8 L. R. A., n. s., 327.)

There can be no doubt that appellant had an implied easement or *quasi* easement in the plaintiff's property to pump and use water from the well; and the water pipe leading thereto was an appurtenant of appellant's dominant estate which the plaintiff had conveyed to appellant's grantor. (*Larsen v. Peterson,* 53 N. J. Eq. 88; *Vt. Central Railroad Co. v. Estate of Hills,* 23 Vt. 681; *Coolidge v. Hager,* 43 Vt. 9.)

Easements appurtenant to dominant estates are given greater significance in England than in America (*Lampman v. Milks,* 21 N. Y. 505), and properly so, no doubt, since conditions tend to become settled and crystallized in long-established communities. With us, there is constant transition, growth, improvement. Our hamlets of yesterday become substantial towns to-day and will be great cities to-morrow. It would ill accord with our ever-advancing development and progress to tie us down too rigidly by giving undue significance to old ways and to old notions. On this subject, the supreme court of Wisconsin has said:

"It is, of course, apparent that this rule has its reason in presumption of intended permanence of real estate arrangement supposed to be in the

minds of the grantor and the grantee. Whatever may be true in older communities, it would be difficult to find justification for any such presumption in a new and developing country, and especially in the cities. There, instead of permanence, change is to be expected,—is, indeed, essential to prosperity. As the city grows, large grounds appurtenant to residences must be cut up to supply more residences near to business, and it must be expected that land will be occupied by the apartment building covering all the ground of the owner. The cistern, the outhouse, the cesspool, and the private drain must disappear in deference to the public waterworks and sewer; the terrace and the garden, to the need for more complete occupancy. Hence, there can be but slight reason to suppose that, upon the sale of that part of an entire tract on which stands a house, it is intended permanently to subject other parts of the tract to such obsolescent uses, although the owner of the whole had so devoted them. This is even more obvious in the business parts of a city, where the row of ancient barracks with their exterior appurtenances must give way to modern business blocks occupying to the full limits of the owner's land." (*Miller v. Hoeschler*, 126 Wis. 263, 268, 8 L. R. A., n. s., 327, 333, 334.)

The findings of fact determined by the trial court disclosed that the deprivation of the easement did not very seriously affect the appellant's full enjoyment of his property. The pertinent findings read:

"He [appellant] used the water from the well for drinking and cooking purposes, but for all other purposes in the house, he used the city water. . . . At all times since the city water was installed in the house now owned by the defendant, there has been an abundance of good wholesome water derived from the city water plant, and water from this well is not necessary for a full and complete enjoyment of the premises owned by the defendant."

In view of this, we cannot say that the court erred in granting the plaintiff the injunction, nor in refusing the equitable relief prayed for by appellant. But this conclusion, however, does not altogether dispose of the case. The appellant pleaded substantial damages; his evidence tended to prove that the well water was more refreshing in the summer time for drinking purposes than the city water. He was also somewhat inconvenienced in watering his horses when the connection with the well was cut off. Appellant had a legal right to the well water; he had a legal right to have the pump connection with the well remain as it existed at the time the plaintiff established it and as plaintiff had sold it to appellant's grantor. The fact that plaintiff's offending is not so serious as to secure to appellant a

restoration of the former status of the well by equitable inter-ference takes nothing from appellant's right to strict legal re-dress. He pleaded a cause of action for damages. That issue should be tried out. (*Gaynor v. Bauer*, 144 Ala. 448; *Philbrick v. Ewing*, 97 Mass. 133; 14 Cyc. 1224; 48 L. R. A., n. s., 387; 9 R. C. L. 819.)

The judgment of the trial court is affirmed on the equitable issues, but the cause is remanded for further proceedings to determine the issue of damages.