No. 45,167

RICHARD R. HORNER and GWENDOLEN P. HORNER, *Appellants,* v. MARINUS HEERSCHE and EDITH M. HEERSCHE, *Appellees.*

(447 P. 2d 811)

Opinion filed December 7, 1968.

*Bruce B. Fitts,* of Wichita, argued the cause, and *Harold L. Blake, Wilbur H. Jones,* and *Herbert H. Hopper,* all of Wichita, were with him on the brief for the appellants.

*George D. McCarthy,* of Wichita, argued the cause and was on the brief for the appellees.

The opinion of the court was delivered by

FONTRON, J.: The plaintiffs bring this action seeking an easement and right of way by necessity across land owned by the defendants. The trial court denied plaintiffs the relief for which they asked and entered judgment for the defendants. Plaintiffs have appealed from that judgment.

There is no dispute as to the facts, for the defendants, with one exception which we think immaterial, have adopted the statement of facts contained in the plaintiffs' brief.

John Howard, at the time of his death in March, 1956, owned the following land in Sumner County:

"Lot One (1), Section Seven (7), Township Thirty (30) South, Range Two (2) East of the Sixth P. M. and

"Lots Three (3), Four (4), Seven (7) and Eight (8), Section Six (6), Township Thirty (30) South, Range Two (2) East of the Sixth P. M."

At the closing of Mr. Howard's estate in May, 1957, this real estate was assigned to his heirs. On September 10, 1957, the heirs offered the land for sale at public auction. At the sale, plaintiffs bought a one-half interest in Lot One (1), Section Seven (7), and Harry R. Horner and wife purchased the other half interest. Subsequently Harry and his wife conveyed their half interest to these plaintiffs who now own the entire interest in Lot One (1).

At the same public sale, the defendants bought Lots Three (3), Four (4), Seven (7) and Eight (8), Section Six (6), and have continued to own them. Lots Three (3) and Four (4) are not involved in this controversy and will require no further mention. The three lots which are involved in this lawsuit will hereafter be designated simply as Lots 1, 7 and 8.

Lot 1, now owned entirely by the plaintiffs, is landlocked. It is bounded on the north by Lots 7 and 8, owned by the defendants, on the south and west by the Arkansas river, and on the east by land belonging to strangers. There is no public road providing access to plaintiffs' Lot 1. Old highway K-53 is located approximately one-half mile north of plaintiffs' property, ending at the northeast corner of Lots 7 and 8. A north-south road is approximately three-fourths (¾) mile east of Lot 1, but lands owned by strangers intervene.

During his lifetime, Mr. Howard leased a part of all three lots to a sand company for removal of sand. In 1949 a way existed from

old highway K-53 south across Lots 7 and 8 to Lot 1, which way was used by Howard and his lessees and licensees to reach Lot 1.

Shortly after the defendants bought Lots 7 and 8 in 1957 they began removing sand therefrom in their own behalf and opened a new way of access along the extreme edge of the two lots with a gate on the north line of their property. The defendants gave plaintiffs a key to the lock securing the gate and thereafter plaintiffs and their invitees and licensees used both the new and old access ways with the defendants' knowledge and consent until the defendants closed the old way in January, 1965. The plaintiffs continued to use the new access, with knowledge and consent on the part of the defendants, until the defendants changed the lock on the gate in April, 1965. At that time the defendants refused plaintiffs the use of the new access way and have continued in their refusal. Hence this lawsuit.

The case was tried to the court, which made a number of factual findings, only one of which need be set forth in detail. The court's final finding recites:

"Plaintiffs have an adequate remedy at law, pursuant to K. S. A. 68-117, to gain access to a public highway either to the north over defendants' land, or to the east, or east and then north over land of other owners. Therefore, their prayer in equity for establishment of a roadway or right-of-way easement by implication over defendants' land must be denied. Had only the land of plaintiffs been sold by the Howards and they, the Howards, had retained the frontage property, then the case law suggested by plaintiffs could be applicable."

In strict accord with the above finding of fact the trial court entered the following conclusion of law:

"Plaintiffs have an adequate remedy at law under K. S. A. 68-117, and from the evidence presented in the record, equitable relief, as prayed for, must be denied; and it is so ordered and decreed; and judgment is accordingly entered for defendants herein. . . ."

This is the judgment to which the plaintiffs take exception.

Essentially the plaintiffs raise two points on appeal: 1. That the remedy available under K. S. A. 68-117 is not exclusive or mandatory, but is optional under the circumstances. 2. That they are entitled to a way of necessity across the defendants' property.

Turning first to the general area of easements or ways created of necessity, we note that Kansas has long given recognition to the common-law rule, generally followed by the courts of this country, which implies a way of necessity where a grantor either conveys or retains a portion of his lands which otherwise would be inaccessible.

(*Mead v. Anderson,* 40 Kan. 203, 19 Pac. 708.)  Speaking in Mead, this court said:

". . . The rule is fundamental that where one purchases land from another, he purchases also the right of access thereto. (Citing cases.) And this right cannot be taken away when once obtained. . . ."

The rule is well phrased, and the reasoning which undergirds the same is simply explained in the early and frequently cited case of *Collins v. Prentice,* 15 Conn. 39:

"It is well settled, as a part of the common law of England, that if a man having a close, to which he has no access, except over his other lands, sell that close, the grantee shall have a way to it, as incident to the grant; for without it, he cannot derive any benefit from the grant. This rule has been established for more than two centuries, and seems not to have been questioned on the trial. (Citing cases.) And although doubts have formerly been expressed upon the subject, it seems now to be as well settled, that, if the grantor had reserved that close to himself, * and sold his other lands, a right of way would have been reserved. (Citing cases.)

"The way, in the one case, in contemplation of law, is granted by the deed; and in the other case, reserved. And although it is called a way of necessity, yet in strictness, the necessity does not create the way, but merely furnishes evidence as to the real intention of the parties. For the law will not presume, that it was the intention of the parties, that one should convey land to the other, in such manner that the grantee could derive no benefit from the conveyance; nor that he should so convey a portion as to deprive himself of the enjoyment of the remainder. The law, under such circumstances, will give effect to the grant according to the presumed intent of the parties. (pp. 43, 44.)

For other Kansas cases where the rule has been applied, see *Moll v. Ostrander,* 124 Kan. 757, 262 Pac. 592; *Wilkins v. Diven,* 106 Kan. 283, 187 Pac. 665; *Van Sandt v. Royster,* 148 Kan. 495, 83 P. 2d 698.

The Collins case makes it clear that an easement of necessity may arise, under appropriate circumstances, either in favor of land conveyed by the grantor or for the benefit of land retained by him. Kansas has adopted the same view. In *Van Sandt v. Royster,* supra, where a sewer easement was claimed across property conveyed by a common grantor, this court stated:

"We are inclined to the view that the circumstance that the claimant of the easement is the grantor instead of the grantee, is but one of many factors to be considered in determining whether an easement will arise by implication. An easement created by implication arises as an inference of the intentions of the parties to a conveyance of land. The inference is drawn from the circumstances under which the conveyance was made rather than from the language of the conveyance. The easement may arise in favor of the conveyor or the conveyee. . . ." (pp. 500, 501.)

Certain language found in the court's finding suggest that the situation here would be different had the Howards retained Lots 7 and 8 after selling Lot 1 to the plaintiffs. We are forced to disagree. The parcels of land conveyed in the Collins case were part of an estate and were sold by the executor at public sale for payment of debts. In *Ferguson v. Ferguson,* 106 Kan. 823, 189 Pac. 925, this court recognized that ways of necessity might arise in connection with lands set aside or allocated in partition.

Neither would the sequence in which these lots were sold be of significance. If Lot 1 was first sold, an easement would then pass to plaintiffs over Lots 7 and 8. If Lots 7 and 8 had been sold first, an easement therein would be reserved in the Howards, which also would pass to the plaintiffs on the sale of Lot 1. In 25 Am. Jur. 2d, Easements and Licenses, § 34, pp. 447, 448, the rule is thus expressed:

"A way of necessity is an easement founded on an implied grant or implied reservation. It arises where there is a conveyance of a part of a tract of land of such nature and extent that either the part conveyed or the part retained is shut off from access to a road to the outer world by the land from which it is severed or by this land and the land of strangers. In such a situation there is an implied grant of a way across the grantor's remaining land to the part conveyed, or conversely, an implied reservation of a way to the grantor's remaining land across the portion of the land conveyed. *The order in which two parcels of land are conveyed makes no difference in determining whether there is a right of way by necessity appurtenant to either.*" (Emphasis supplied.)

The subject of easements, including those arising by implication, was treated rather exhaustively in *Smith v. Harris,* 181 Kan. 237, 311 P. 2d 325. The inquiring reader is referred to the opinion in that case for a lucid and learned discussion delivered through the medium of Mr. Justice Schroeder.

The point most open to debate concerns the effect of K. S. A. 68-117 on easements implied from necessity, necessity constituting an indispensable part of the rule. (*Smith v. Harris,* supra.) The statute provides in pertinent part:

". . . Whenever the premises of any person in this state shall be so completely surrounded by adjoining lands, the property of other persons, as to be without access to any public highway, then such person may petition the board of county commissioners of the county in which such premises lie for a road, and one road only, through some portion of the adjoining lands. The petition shall set forth the use and purposes of such proposed road. Upon presentation of such petition, the commissioners shall proceed in accordance with the provisions of the act of which this is amendatory to lay out such road, make returns of plats, and allow damages, if any should be held or allowed: *Provided,*

Said road shall not be less than forty (40) feet nor more than one hundred (100) feet in width and shall be laid out upon the quarter or quarter-quarter section lines when practicable.

"And the said road when so ordered by the board of county commisisoners shall be platted and recorded in the office of the register of deeds and shall become a public way, subject to restrictions contained in the petition: *And provided further,* That the owner or owners, their grantees, successors or assigns, of the land specifically benefited by the establishment of such public road, shall forthwith pay all expenses of establishing said road, including all damages, if any should be held or allowed and thereafter forever maintain and keep the same in repair and without any expense or liability to the township or other municipality in which such road is so laid out and established."

It is contended by the defendants that the statute provides the sole means of relief from the quandary in which the plaintiffs find themselves, and such was the view taken by the trial court. The plaintiffs paraphrase the issue in this manner: Is K. S. A. 68-117 an exclusive or mandatory remedy?

This is a question which has never been answered by this court, although the statute is of ancient lineage. Mention of the statute is found in *Mead v. Anderson,* supra, decided in 1888, and in *Chinn v. Strait,* 173 Kan. 625, 250 P. 2d 806, which was decided in 1952. In neither case did the court consider it necessary to pass upon the effect of the statute.

Among other courts which have faced similar situations there is diversity of opinion as to extent of the necessity required before an easement or way of necessity can be implied. The divergence of views is mirrored in the following passage from 25 Am. Jur. 2d, Easements and Licenses, § 37, pp. 450, 451:

"There is a conflict of authority as to the degree of necessity required before a way of necessity may be implied. Some authorities maintain that a reasonable necessity is sufficient, but other authorities require strict or absolute necessity. In any case, it appears that a way of necessity must be more than one of mere convenience.

"The reasonableness of the expense of obtaining a way is made the test of necessity in some cases, to be determined by comparing the cost of creating the way with the value of the property. Under this test a way of necessity will not be implied if the claimant can obtain a means of access to his land at reasonable expense. However, it has been held that the implication of a way of necessity should not be denied merely because it is possible to procure a right of way by condemnation under a statute or to procure a highway by application to, and action by, the public authorities."

The case of *Hellberg v. Coffin Sheep Co.,* 66 Wn. (2d) 664, 404 P. 2d 770 bears much similarity to the instant action, the state of

Washington having a statute extending the right of condemnation in cases of landlocked property. In an opinion upholding a way of necessity, the court said:

"An easement of necessity is an expression of a public policy that will not permit property to be landlocked and rendered useless. In furtherance of that public policy, we give the owner, or one entitled to the beneficial use of land-locked property, the right to condemn a private way of necessity for ingress and egress. RCW 8.24.010.

"Condemnation, however, is not necessary where the private way of necessity is over the land of the grantor or lessor of the landlocked property." (pp. 666, 667.)

In *Blum v. Weston,* 102 Cal. 362, 36 Pac. 778, the defendants claimed an easement by necessity in land owned by the plaintiffs. The respective parties claimed under grants originating from grantors to whom lands once held in common had been allotted in partition proceedings. In deciding that the defendant was entitled to a way of necessity, the court said:

"That defendant could have a way by condemnation under the statute does not affect his right. (Citing cases.)" (p. 369.)

On this point, the California court cites *Collins v. Prentice,* supra, where a Connecticut statute authorized select-men to lay out private ways. In response to a contention that this statute did away with the common law rule, the Connecticut court stated:

"There is certainly nothing in the statute, which in terms changes the common law upon this subject. And we think there is nothing arising by implication. Private ways may be very needful and proper which are not strictly ways of necessity. . . ." (p. 45.)

On the other side of the coin is a Montana case, *Simonson v. McDonald,* 131 Mont. 494, 311 P. 2d 982, holding there is no implied reservation or grant of easement by necessity where a constitutional provision authorizes the opening of a private road by means of condemnation proceedings. The force of this case is somewhat lessened by *Thisted v. Country Club Tower Corp.,* 146 Mont. 87, 405 P. 2d 432, where the court refused to apply the rule to a differing factual situation. The Simonson case was followed in *State v. Black Bros. et al.,* 116 Tex. 615, 297 S. W. 213, 53 A. L. R. 1181.

Under the conditions obtaining in this case we incline to the view that K. S. A. 68-117 does not preclude plaintiffs from asserting their right to a way of necessity over the defendants' land. There was unity of title to all three lots during Mr. Howard's lifetime and until their separation after his death. The way across Lots 7 and 8 to

Lot 1 had long been used by Howard and his lessees to reach Lot 1, and there is nothing to justify any assumption that it was traveled surreptitiously or was not visible to all who could see.

For more than six years after the defendants bought their lots, they permitted plaintiffs to use the old way without objection. After they opened a new way and put a lock on the gate, the defendants gave plaintiffs a key to the gate and thereafter plaintiffs used both ways for some five months. We do not, of course, mean to imply that plaintiffs thereby acquired any right by prescription, but we think there is every presumption that an easement of necessity came into being in plaintiffs' favor at the time the tracts were separately conveyed.

Even though plaintiffs might have invoked the provisions of K. S. A. 68-117 to open a road to their property, we think this was not required of them. A proceeding under this statute would entail great and continuing expense. The requirement that one who proceeds under the statute must pay the entire expense of establishing and *forever* maintaining the road, which must be at least 40 feet wide, together with all damages allotted in connection therewith, plus the fact that the road when completed will become a *public road*, imposes too great a burden to justify us in saying that plaintiffs' right to their implied easement no longer exists.

The analogous case of *Sample v. Jefferson County,* 108 Kan. 498, 196 Pac. 440 supports this view. In Sample, the plaintiffs sought to enjoin the county from removing a bridge which would have resulted in loss of ingress to and egress from the plaintiffs' farm. The county contended that the plaintiffs could provide a means of access pursuant to K. S. A. 68-117, and thus had an adequate remedy. This court, in allowing the injunction, rejected the county's contention, pointing out that should plaintiffs proceed under the statute they would be providing *the public* and themselves a road, at their own expense, the upkeep of which would likewise be at their expense as long as they *or the public* desired to use it.

Cases are cited by the defendants holding that an owner may not acquire an easement over his own land. The cases are not in point. A way of necessity is sometimes referred to as a quasi easement. It does not arise, in any event, nor is it to be implied, until lands owned by a common grantor are separated.

The defendants say that plaintiffs have not shown themselves entitled to equitable relief. We entertain a contrary view. The

defendants have designated a way across their land which plaintiffs have used in the past, and it would seem that the trial court, in the exercise of its equitable powers, might protect its continued use in a manner equitable to all parties within the bounds expressed in this opinion.

This judgment is reversed and the cause remanded with directions to the trial court to proceed accordingly.