[No. 35227-3-II. Division Two. October 9, 2007.]

FRED NOBLE ET AL., *Respondents*, v. SAFE HARBOR FAMILY PRESERVATION TRUST, *Appellant*, TILLICUM BEACH, INC., *Respondent.*

*Michael W. Johns* (of *Davis Roberts & Johns, PLLC*), for appellant.

*Robert L. Beale* (of *McGavick Graves, PS*); and *Robert D. Wilson-Hoss*, for respondents.

¶1 ARMSTRONG, J. — Fred and Faith Noble petitioned to condemn a private way of necessity across Safe Harbor Family Preservation Trust property based on our holding in *Safe Harbor Family Pres. Trust v. Noble*, noted at 120 Wn. App. 1060, 2004 Wash. App. LEXIS 502 (*Safe Harbor* I). In answer, Safe Harbor (Paul and Agnes Stokes) alleged that a feasible alternative route existed over the Nobles' adjoining landowners, Tillicum Beach, Inc. The Nobles then joined Tillicum as a potential condemnee. The trial court found that an existing way over Safe Harbor property was the least burdensome and granted the Nobles an easement over Safe Harbor property. Thereafter the trial court found that Safe Harbor was responsible for Tillicum's involvement and ordered (1) Safe Harbor to pay Tillicum's attorney fees of $39,920.00 and costs of $226.20; and (2) the Nobles to pay Safe Harbor's attorney fees; however, the trial court reduced Safe Harbor's attorney fees by 70 percent (in order to award them only fees spent in litigating against the Nobles) to $6,596.25. Safe Harbor appeals the order requiring it to pay Tillicum's attorney fees and the order reducing its claimed attorney fees against the Nobles. We affirm.

## FACTS

¶2  In *Safe Harbor* I, we set forth the facts:

In the mid-1940s, Ernest and Beulah Worl subdivided their property off Highway 101 on the Hood Canal into two lots. On one lot they created a 10-foot-wide ingress and egress easement for the benefit of the other lot. They recorded this easement.

In 1972, Paul and Agnes Stokes acquired the servient estate once owned by the Worls. They deeded the property to Safe Harbor in 1985. The Stokeses continued to live on the property, which is now in trust for the benefit of their children.

In 1998, the Nobles acquired the dominant estate once owned by the Worls.

The record easement has not been used since 1972, if ever. Instead, the Nobles and their predecessors have entered off Highway 101 through a gate and crossed a paved courtyard on Safe Harbor's property [(easement by usage)] to access their own. The trial court specifically found that there was no evidence explaining why the access used was outside the record easement.

The Stokeses erected a barrier across the courtyard access sometime before the Nobles purchased their property. The barrier was in place when the Nobles purchased their lot and they noticed it, but they never asked the Stokeses about it or discussed using Safe Harbor's property to access their own.

*Safe Harbor* I, 2004 Wash. App. LEXIS, at *2-3. We also explained that because the Skokomish Tribe would not issue the Nobles a development permit for their record easement, the Nobles' only recourse was an action to privately condemn a way of necessity. *Safe Harbor* I, 2004 Wash. App. LEXIS, at *7.

¶3  The Nobles petitioned to condemn a private way of necessity across Safe Harbor's property. Safe Harbor answered that the Nobles had "a feasible alternative route" over Tillicum's property; Safe Harbor also counterclaimed for damages because the Nobles' condemnation action prevented Safe Harbor from finalizing a sale of its property. Clerk's Papers (CP) at 177-79. The Nobles then successfully

moved to amend the original petition to join adjacent landowner Tillicum as an additional party defendant.

¶4 The trial court ruled that the Nobles' proposed route over Safe Harbor property was less burdensome than the route over Tillicum's property, it granted the Nobles an easement for ingress and egress over the proposed route, and it awarded Safe Harbor $3,300 for its loss of the property's use.

¶5 Tillicum moved for attorney fees and costs against Safe Harbor, arguing that

[w]here the factual claims [of a litigant] are not only unfounded, but the litigant fails to present any evidence in support of them at trial, then the [trial court] should consider these failures in determining a reasonable attorney fee to award to the opposing party.

CP at 92-93. The trial court ordered Safe Harbor to pay Tillicum's attorney fees and costs, explaining that

[c]learly in this case, [Safe Harbor] was responsible for involving [Tillicum] as a potential alternate condemnee in this action.

Under [*Kennedy v. Martin*, 115 Wn. App. 866, 63 P.3d 866 (2003),] RCW 8.24.030[,] and a balancing of the equities present in this case, the court will grant the request of [Tillicum] for an award of attorney fees and costs from [Safe Harbor].

CP at 16. The trial court also awarded Safe Harbor attorney fees and costs from the Nobles, but it reduced the award because

for purposes of an award of attorney fees, time stated on the billings to [Safe Harbor] should be reduced by 70 percent representing a conservative estimate of the time spent involving [Tillicum] as an alternate condemnee and the time spent regarding issues related to the potential sale of the [Safe Harbor] property.

CP at 19-20.

¶6 On appeal, Safe Harbor essentially argues that the trial court erred in ordering it to pay Tillicum's fees and

reducing its award of fees and costs against the Nobles because (1) the Nobles joined Tillicum as a party and, thus, should be liable for Tillicum's fees and (2) Safe Harbor had a right to raise the affirmative defense that the Nobles had a more feasible access route over Tillicum's property.

## ANALYSIS

### I. TILLICUM'S ATTORNEY FEES

¶7 The right to an easement by way of necessity arose out of English common law. *Horner v. Heersche*, 202 Kan. 250, 253, 447 P.2d 811 (1968) (quoting *Collins v. Prentice*, 15 Conn. 39, 43-44 (1842)). The majority of states still use the common-law approach to establish an easement by way of necessity. *Horner*, 202 Kan. at 252; *see also Adams v. Planning Bd.*, 64 Mass. App. Ct. 383, 389-90, 833 N.E.2d 637 (2005); *Stock v. Ostrander*, 233 A.D.2d 816, 817-18, 650 N.Y.S.2d 416 (1996); *Carstensen v. Chrisland Corp.*, 247 Va. 433, 438, 442 S.E.2d 660 (1994). In common-law matters of equity, a trial court has broad discretion to create an equitable remedy. *Sorenson v. Pyeatt*, 158 Wn.2d 523, 531, 146 P.3d 1172 (2006) (quoting *In re Foreclosure of Liens*, 123 Wn.2d 197, 204, 867 P.2d 605 (1994)).

¶8 In Washington, chapter 8.24 RCW governs a condemnation proceeding for a private way of necessity. *Brown v. McAnally*, 97 Wn.2d 360, 366-67, 644 P.2d 1153 (1982) (RCW 8.24.010 implements the right to condemn a "private way of necessity" established in Washington Constitution article I, section 16). Nonetheless, the statute grants trial courts considerable discretion in awarding fees and costs. RCW 8.24.030 provides: "In any action brought under the provisions of this chapter for the condemnation of land for a private way of necessity, reasonable attorneys' fees and expert witness costs *may* be allowed by the court to reimburse the condemnee." (Emphasis added.) Rather than mandating an award of fees and costs based on statutory

standards, the legislature merely stated that the trial court "may" award fees and costs. That the trial court "may" award fees and costs necessarily grants the court discretion to decide what equitable grounds support an award and the amount of the award. *See Kennedy*, 115 Wn. App. at 872 (a trial court has discretion to award fees in light of the circumstances in each case (citing *Beckman v. Wilcox*, 96 Wn. App. 355, 367, 979 P.2d 890 (1999))). Moreover, although the statute limits the recipients to condemnees, it does not limit the parties against whom the court may award fees and costs.

¶9 Courts have exercised broad discretion in awarding fees and costs under RCW 8.24.030. For example, the trial court may order one condemnee to pay the fees and costs of another condemnee. *Kennedy*, 115 Wn. App. at 874. The trial court may award a condemnee attorney fees and costs even though the condemnee has lost the feasible alternative issue. *Sorenson v. Czinger*, 70 Wn. App. 270, 279, 852 P.2d 1124 (1993) (statute grants the trial court discretion in awarding fees and costs without regard to who has prevailed). And the trial court may award attorney fees and costs against a condemnor who voluntarily dismisses its condemnation action. *Beckman*, 96 Wn. App. at 365-66 (statutory language suggests that the legislature intended broad application of RCW 8.24.030).

¶10 Safe Harbor argues that "the clear law set forth in RCW 8.24.030 and . . . enunciated in *Kennedy*" requires the Nobles to pay Tillicum's attorney fees because the Nobles joined Tillicum in the action.

¶11 In *Kennedy*, the trial court ordered one set of condemnees to pay another's attorney fees after the former joined the latter in the action. *Kennedy*, 115 Wn. App. at 868. On appeal, the first condemnees argued that they should not be penalized for adding the second condemnee because they had a right to establish an alternate path for condemnation. *Kennedy*, 115 Wn. App. at 870. They also argued that only condemnors may incur liability under RCW 8.24.030. *Kennedy*, 115 Wn. App. at 872-73. We

rejected both arguments, reasoning that "nothing in the language of RCW 8.24.030 or in the case law . . . prevents a court from requiring the party responsible for involving the party seeking reimbursement of his attorney fees to pay those fees." *Kennedy*, 115 Wn. App. at 873.

¶12 Moreover, that Safe Harbor did not join Tillicum does not immunize it from responsibility for Tillicum's attorney fees under RCW 8.24.030. Safe Harbor's claim that the Nobles had a better route over Tillicum's property was based solely on evidence Paul Stokes provided by affidavit. He stated that the Nobles regularly used a driveway over Tillicum's property to get to their property and that he had helped create the route some years earlier with his backhoe. The Nobles and Tillicum presented testimony that Stokes had never worked on any road over Tillicum's property and that no road existed over the property, in part because of a blocking drain field. The trial court heard the evidence, visited the site, and concluded that Paul Stokes was not a credible witness.

¶13 RCW 8.24.030 grants trial courts broad discretion in awarding attorney fees. We conclude that the trial court did not err in looking beyond the mechanical process of joinder to answer the question of who was responsible for the litigation with Tillicum. Clearly, the full responsibility for the costs of litigating the claimed alternative feasible access rests with Safe Harbor and the Stokeses.

II. REDUCTION OF ATTORNEY FEES

¶14 Safe Harbor faults the trial court for reducing its award of attorney fees by 70 percent to reflect the portion of the litigation fees related to Tillicum.

¶15 As previously discussed, the trial court has broad discretion to award attorney fees under RCW 8.24.030. *Sorenson*, 70 Wn. App. at 279. A court abuses its discretion only if it is manifestly unreasonable or based on untenable grounds. *Beckman*, 96 Wn. App. at 367. "In all cases . . . it is the trial judge who has watched the case unfold and who

is in the best position to determine which hours should be included in the [attorney fees] calculation." *Chuong Van Pham v. Seattle City Light*, 159 Wn.2d 527, 540, 151 P.3d 976 (2007).

¶16 The trial court reduced Safe Harbor's award of attorney fees and costs by "balancing of the equities." CP at 18-19. After finding that the hourly rates Safe Harbor claimed were reasonable, the trial court explained:

> From a review of the billings attached to the [d]eclaration of [Safe Harbor's counsel,] . . . clearly more than [50 percent] of the time expended on behalf of [Safe Harbor] was specifically for or due to the involvement of [Tillicum] as an alternate condemnee and a smaller portion of time was spent regarding matters related to the sale of the [Safe Harbor] property. Additionally, the [trial court] will find that the time allocated for many services that may have been necessary without an alternate condemnee, such as, depositions and preparation therefore, trial preparation and trial time were substantially increased due to the inclusion of the proposed alternate condemnee. The [trial court] finds that for purposes of an award of attorney fees, time stated on the billings to [Safe Harbor] should be reduced by [70] percent representing a conservative estimate of the time spent involving [Tillicum] as an alternate condemnee and the time spent regarding issues related to the potential sale of the [Safe Harbor] property.

CP at 19-20. Safe Harbor does not argue that the trial court erred in reducing attorney fees and costs based on its counterclaim regarding the potential sale of Safe Harbor; instead, it treats the entire 70 percent reduction as due to Tillicum's involvement. And we have held that the trial court did not err in awarding fees and costs based on Safe Harbor's role in requiring litigation as to a possibly more feasible alternative route over Tillicum's property. Thus, we find no error in the trial court's reduction of fees from the Nobles to Safe Harbor based on the same rationale.

### III. ATTORNEY FEES ON APPEAL

¶17 Safe Harbor and Tillicum request attorney fees and costs on appeal under RCW 8.24.030. RAP 18.1(a) allows

recovery of attorney fees and costs on appeal "[i]f applicable law grants to a party the right to recover reasonable attorney fees or expenses." The trial court found (1) that Paul Stokes, the only witness to offer evidence on behalf of Safe Harbor, was not credible, a finding that binds us, and (2) that Safe Harbor (through Paul Stokes) was responsible for involving Tillicum as a potential alternate condemnee. Because of these findings, we award Tillicum its attorney fees on appeal against Safe Harbor. And, balancing the equities between the Nobles and Safe Harbor, we deny Safe Harbor its attorney fees on appeal.

¶18 Affirmed.

PENOYAR, J., concurs.

¶19 VAN DEREN, A.C.J. (dissenting) — I respectfully dissent. I disagree with the majority that RCW 8.24.030 can be read to require the actual condemnee to pay a potential condemnee's attorney fees and costs when the condemnor, not the actual condemnee, joined the alternative condemnee and requested condemnation of the alternative condemnee's land. I would hold that the trial court abused its discretion in requiring Safe Harbor Family Preservation Trust to pay any portion of Tillicum Beach, Inc.'s attorney fees and costs based on its conclusion that Safe Harbor was responsible for Tillicum Beach, Inc.'s presence in the lawsuit. To hold otherwise unreasonably burdens the condemnee's statutory right to assert alternative routes for condemnation and requires the first named condemnee to prove the alternate route is better or face the imposition of fees for the alternate condemnee, contrary to RCW 8.24.025.

¶20 Generally, a trial court may award attorney fees "only when authorized by a contract, statute, or recognized ground of equity." *State Farm Mut. Auto. Ins. Co. v. Johnson*, 72 Wn. App. 580, 593, 871 P.2d 1066 (1994). In order to reverse an attorney fees award, an appellate court must find the trial court manifestly abused its discretion. *Beckman v. Wilcox*, 96 Wn. App. 355, 363, 979 P.2d 890 (1999). "That is, the trial court must have exercised its

discretion on untenable grounds or for untenable reasons." *Chuong Van Pham v. Seattle City Light*, 159 Wn.2d 527, 538, 151 P.3d 976 (2007) (citing *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971)).

¶21 Here, attorney fees are authorized by RCW 8.24.030, which provides in relevant part: "In any action brought under the provisions of this chapter for the condemnation of land for a private way of necessity, reasonable [attorney] fees and expert witness costs may be allowed by the court *to reimburse the condemnee*." (Emphasis added.) "[RCW 8.24.030] grants the trial court discretion to award reasonable fees and costs without regard to whether the condemnee has prevailed in the action or on any particular issue." *Sorenson v. Czinger*, 70 Wn. App. 270, 279, 852 P.2d 1124 (1993).

¶22 The Nobles, not Safe Harbor, sued Tillicum to condemn their property for the Nobles' access. But the trial court reasoned that because Safe Harbor exercised its legal right to assert a possible alternate route for the Nobles' access, it was responsible for Tillicum's presence in the lawsuit. The trial court relied on *Kennedy v. Martin*, 115 Wn. App. 866, 63 P.3d 866 (2003) to support its imposition of fees and costs against Safe Harbor. But in *Kennedy*, the condemnee sued the adjacent landowner, requiring it to expend fees to defend the condemnee's (not the condemnor's) suit. 115 Wn. App. at 868.

¶23 Here, there is no dispute that the Nobles, the condemnor, sued Tillicum to condemn Tillicum's land for the Nobles' use. Therefore, the Nobles' tactical decision to assure that the trial court condemned either Safe Harbor's or Tillicum's property in the same lawsuit does not implicate *Kennedy*. Thus, the trial court's reliance on *Kennedy* was misplaced.

¶24 Furthermore, *Kennedy* made it clear that alternative condemnees are not necessary parties in condemnation actions and that the burden of proving the best route remains on the condemnor. 115 Wn. App. at 870-71. In *Kennedy*, a condemnee asserted an alternate route and

sued the adjacent landowners, joining them in the condemnation action as alternate condemnees. 115 Wn. App. at 867. The trial court awarded both the easement and the adjacent landowners' attorney fees against the actual condemnee. *Kennedy*, 115 Wn. App. at 867-68. On appeal, the condemnee, relying on *Sorenson,* argued that he had no choice but to join the adjacent landowners. *Kennedy*, 115 Wn. App. at 870. We disagreed, stating that "[f]ailure to join an owner of the [proposed alternate route parcel] does not preclude consideration of the alternate route," and "[n]othing in *Sorenson* requires the joinder of the owners of the parcel containing the condemnee's proposed alternative route." *Kennedy*, 115 Wn. App. at 870-71.

¶25 When a potential condemnee asserts the existence of an alternate feasible route, "[t]he burden then shifts to the condemnor to show that the chosen route is more equitable." *Kennedy*, 115 Wn. App. at 870. "The enactment of RCW 8.24.025 eliminated the condemnee's burden to prove oppression or bad faith in the selection among alternative routes to be condemned, shifting the burden to the condemnor to show the chosen route is more equitable than the alternative." *Sorenson*, 70 Wn. App. at 276 n.2.[1] The majority fails to apply this rule here and implies that the first condemnee has the burden of proving that the best route is the alternative it suggests.

¶26 Here, the record demonstrates that Safe Harbor only asserted a possible alternate route through the Tillicum property that the trial court decided was not the optimum route. Awarding fees against Safe Harbor under these circumstances unreasonably burdened its right to assert the existence of an alternate route and erroneously

---

[1] In *Sorenson*, the condemnee proposed an alternate route that was almost 10 times longer than the condemnor's suggested route, crossed several other landowners' property in addition to his own, failed to consider a vertical cliff, and was more costly to build. 70 Wn. App. at 273. As occurred here, the condemnee did not sue the alternate condemnee. Division Three of this court reversed the trial court's ruling that the alternate route was feasible and remanded for further proceedings, but it affirmed the trial court's award of attorney fees in favor of the first condemnee and awarded the condemnee attorney fees on appeal. *Sorenson*, 70 Wn. App. at 279.

shifted the burden of proof to Safe Harbor to show that the alternative route was more equitable, contrary to RCW 8.24.025.[2]

¶27 The majority agrees with Tillicum that Safe Harbor's decision not to "join Tillicum does not immunize it from responsibility for Tillicum's attorney fees." Majority at 175. The majority reasons that "Safe Harbor's claim that the Nobles had a better route over Tillicum's property was based solely on evidence Paul Stokes provided by affidavit." Majority at 175. But the assertion of an alternative route was Safe Harbor's affirmative defense to the Nobles' petition that, by statute, shifted the burden to the Nobles to prove impracticality of the alternate route. Safe Harbor had no burden to show that the alternate route was more practical. And, as Safe Harbor noted, "it is not up to Safe Harbor to determine exactly where an easement over [Tillicum] should be located." Clerk's Papers (CP) at 226.

¶28 The majority's decision requires a condemnee to prove that a specific alternate route is better or face being denied its attorney fees and costs and being ordered to pay the alternate condemnee's fees and costs. Thus, the majority's decision modifies RCW 8.24.030 to allow an award of attorney fees and costs against any condemnee who exercises its statutory right to suggest an alternative route in a condemnation action. It makes the first condemnee "responsible" for involving the alternate condemnee simply by suggesting an alternative route. Majority at 170.

---

[2] RCW 8.24.025 states:

If it is determined that an owner, or one entitled to the beneficial use of land, is entitled to a private way of necessity and it is determined that there is more than one possible route for the private way of necessity, the selection of the route shall be guided by the following priorities in the following order:

(1) Nonagricultural and nonsilvicultural land shall be used if possible.

(2) The least-productive land shall be used if it is necessary to cross agricultural land.

(3) The relative benefits and burdens of the various possible routes shall be weighed to establish an equitable balance between the benefits to the land for which the private way of necessity is sought and the burdens to the land over which the private way of necessity is to run.

¶29 The majority affirms an attorney fees award against Safe Harbor that is six times the amount of fees awarded to Safe Harbor from the Nobles, who are the only party benefiting from the condemnation lawsuit. Thus, Safe Harbor has been punished for suggesting an alternate route and for the Nobles' lawsuit against Tillicum, a result contrary to RCW 8.24.030. I would hold that this reading of the legislative provisions is untenable, is manifestly unreasonable, and, therefore, is an abuse of the trial court's discretion.

¶30 I believe that the majority also erroneously endorses, majority at 176, the trial court's reference to a "balancing of the equities present in this case" in its award of and reduction of attorney fees, CP at 16, and its conclusion of law stating that "balancing all of the equities, this [c]ourt should enter its judgment" against Safe Harbor.[3] CP at 16.

¶31 It is unclear what the trial court intended with its use of the phrase "balancing of the equities" in this context. The phrase "balancing of the equities" applies in cases where a court sits in equity. *See, e.g., Hollis v. Garwall, Inc.,* 137 Wn.2d 683, 699-700, 974 P.2d 836 (1999) (doctrine of balancing of the equities evoked where the plaintiff sought an injunction). The language of RCW 8.24.025 requires the trial court to strike an *"equitable balance* between the benefits to the land for which the private way of necessity is sought and the burdens to the land over which the private way of necessity is to run."* (Emphasis added.) This language is not used in RCW 8.24.030 regarding the award of attorney fees and costs to the condemnee.

---

[3] Throughout the litigation both Tillicum and the Nobles alluded to the facts surrounding the creation of the Nobles' landlocked parcel. But the rights formerly adhering to the Nobles's parcel were extinguished by law. *See Nobel v. Safe Harbor Family Preservation Trust,* noted at 120 Wn. App. 1060, 2004 Wash. App. LEXIS 502. And regardless of whether the holders of the formerly dominant parcel can be faulted for failing to improve the former easement of record before environmental concerns made the improvement impossible or whether Safe Harbor can be faulted for its acquiescence in allowing access, fault is not a pertinent issue in condemnation actions. The sole issue before the trial court, once "it is determined that there is more than one possible route" under RCW 8.24.025, is which route is the least burdensome.

¶32 Furthermore, four equitable grounds may support the award of attorney fees: (1) bad faith conduct, (2) preservation of a common fund, (3) protection of constitutional principles, and (4) private attorney general actions. *Dempere v. Nelson*, 76 Wn. App. 403, 407, 886 P.2d 219 (1994). The trial court did not rely on any of these grounds nor does the record support an award or reduction of an award of attorney fees and costs based on equity. *See Rogerson Hiller Corp. v. Port of Port Angeles*, 96 Wn. App. 918, 930, 982 P.2d 131 (1999) (concluding that a trial court abused its discretion in awarding attorney fees for bad faith conduct based on its finding that testimony was not credible).

¶33 The trial court relied on its conclusion that Safe Harbor was "responsible" for Tillicum's involvement in the case in its attorney fees' decision. CP at 16. It accordingly entered an attorney fee award against Safe Harbor that is six times the amount of fees awarded to Safe Harbor from the Nobles. Such a broad reading of the statute allows an absurd result. *See Davis v. Dep't of Licensing*, 137 Wn.2d 957, 971, 977 P.2d 554 (1999) (When interpreting statutes, we should avoid absurd results or strained consequences.).[4]

---

[4] Paul Stokes's affidavit, to which the majority refers, was part of Safe Harbor's response to Nobles's ancillary action for *immediate* use of an easement across Safe Harbor's property in which Stokes declared that he "used the backhoe to clear and level the *driveway from Mr. Noble's parents' property to the* [*Nobles's*] property. The [Nobles] have continued to use this access way off and on over the past six years since acquiring their property." CP at 195 (emphasis added). Safe Harbor's answer to Nobles's condemnation petition does not incorporate or rely on this affidavit and merely asserts that "[t]here is a feasible alternative route." CP at 178.

I address only the suggestion of a false statement. The majority states that

[Paul Stokes] stated that the Nobles regularly used a driveway over Tillicum's property to get to their property and that he had helped create the route some years earlier with his backhoe. The Nobles and Tillicum presented testimony that Stokes had never worked on any road over Tillicum's property and that no road existed over the property, in part because of a blocking drain field. The trial court heard the evidence, visited the site, and concluded that Paul Stokes was not a credible witness.

Majority at 175.

But the trial court's finding of fact states only that "Mr. Stokes was not a credible witness." CP at 127. When the findings of fact are read in their entirety,

¶34 The trial court also reduced Safe Harbor's attorney fees and costs award by 70 percent. A reduction of attorney fees and costs based on untenable grounds is an abuse of discretion. *See Progressive Animal Welfare Soc'y v. Univ. of Wash.*, 114 Wn.2d 677, 688-89, 790 P.2d 604 (1990). Here the trial court stated that, based on "a balancing of the equities present in the case," the reduction was appropriate. CP at 18. The trial court did not find that Safe Harbor's hourly rates were unreasonable nor did it state what equities it considered. The record is clear that the trial court again based the reduction ("more than [50 percent]") on its earlier finding that Safe Harbor, by asserting an alternate route, was responsible for Tillicum's involvement in the lawsuit, although it was solely the Nobles who sued Tillicum. CP at 19. As previously discussed, I believe such a ruling is based on untenable grounds and, therefore, a reduction of attorney fees based on this finding constitutes an abuse of the trial court's discretion.

¶35 I would hold that the trial court manifestly abused its discretion and would reverse the award of attorney fees against Safe Harbor, reverse the reduction of fees to Safe Harbor, and remand for the trial court's determination of whether those fees should be awarded against the Nobles.

¶36 I would also grant Safe Harbor's request for reasonable attorney fees and costs on appeal under Rules of

---

Stokes's lack of credibility flowed from an 80-plus-year-old man's stubborn defense of his land and his hazy memory of 33 years' presence thereon. The trial court actually found that "Safe Harbor claimed that an alternate route existed. . . . *It did not specify the placement of the route*, but it intended that the route go over [Tillicum.]" CP at 122 (emphasis added).

And the testimony the majority refers to, while disputing Stokes's affidavit, confirms that, before the trial court's site visit, but after the time Paul Stokes said he used his backhoe, a new building and a blocking drain field were constructed over the area Stokes stated he leveled in the ancillary affidavit.

Therefore, evidence of the earlier backhoe use on the Tillicum property was undoubtedly eradicated by the construction of the new building and drain field "right in front of the gap in the fence to the Nobles's property." Br. of Resp't Tillicum at A-30. And Paul Stokes did not testify about the backhoe use at trial nor was it addressed in his deposition or by the trial court's findings of fact.

Appellate Procedure (RAP) 18.1[5] and RCW 8.24.030 because RCW 8.24.030 allows attorney fees "[i]n any action" to reimburse the condemnee. *Sorenson*, 70 Wn. App. at 279.

¶37 I would also impose Tillicum's fees on appeal against the Nobles as condemnors, as the statute contemplates.

Review granted at 163 Wn.2d 1045 (2008).

---

[5] RAP 18.1(a) provides:

> If applicable law grants to a party the right to recover reasonable attorney fees or expenses on review before either the Court of Appeals or Supreme Court, the party must request the fees or expenses as provided in this rule, unless a statute specifies that the request is to be directed to the trial court.