No. 26,734.

A. C. JOBES, *Appellee*, v. THE MILBURN GOLF AND COUNTRY CLUB, *Appellant*.

SYLLABUS BY THE COURT.

EASEMENTS—*Creation and Existence—By Grant or Reservation—By Equitable Estoppel.* Under the facts and circumstances narrated in the opinion, it is held that as an appurtenance to plaintiff's residence property he had a valid and subsisting easement of a private roadway over defendant's golf grounds —by fair interpretation of the instruments under which plaintiff and defendant acquired their adjacent properties from common grantors, and also upon elementary principles of equitable estoppel.

Appeal from Johnson district court; JABEZ O. RANKIN, judge. Opinion filed June 12, 1926. Affirmed.

*S. D. Scott,* of Olathe, *Arthur Miller, David L. Sheffrey* and *Ben. R. Estill,* all of Kansas City, Mo., for the appellant.

*A. L. Berger,* of Kansas City, for the appellee; *O. L. Miller,* of Kansas City, of counsel.

The opinion of the court was delivered by

DAWSON, J.: This lawsuit arose over plaintiff's questioned right to a private roadway over the north end of defendant's golf course.

Jobes v. Milburn Golf and Country Club.

The facts were these: Prior to February 6, 1917, Mary Foster and John R. Foster, common grantors of these litigants, owned 240 acres of land in Mission township, Johnson county. They resided on eighty acres of that property defined as W½ SW¼, 18-12-25 east, and on February 6, 1917, they leased to the Milburn Golf and Country Club 140 acres adjacent to their home eighty on the east, defined thus: W½ SE¼ and E½ SW¼ (less twenty acres described), 18-12-25 east. The term of the lease was for ten years, from April 1, 1917, until April 1, 1927, and contained the following reservation:

"The lessors hereby reserve a thirty-foot roadway along the north side of said land, or a roadway as now used in going from their residence to and from Milburn station, on the Strang Line, and agree to use gates entering said land if desired by the lessees."

On September 6, 1919, the Fosters executed to defendant a written option of purchase of the leased premises, together with the twenty acres reserved from the lease at the time of its execution in 1917. The consideration for the option was one dollar, and it was stipulated that the grantee should have the exclusive right of purchase for five years at $64,000 on specified terms of payment, and that the grantors would convey the property "free and clear." The option also referred to the existing lease and provided for graduated additions "to the rental provided in the lease now held by it [optionee and lessee] on one hundred and forty acres of the above-described premises" during the five-year term of the option, and that the defendant optionee and lessee should have the use of the twenty acres reserved from the original lease of 1917.

On October 8, 1919, a month after the defendant obtained the five-year option, plaintiff purchased the eighty acres which theretofore had been the residence property of the Fosters, and in the general warranty deed of conveyance the grant was described in terms of government survey:

"Together with the right and easement to use for right-of-way purposes a strip of land thirty feet wide over the north end of the Milburn Golf and Country Club as the same is set forth in grantee's lease, said Milburn Golf and Country Club, with all the appurtenances and all the estate, title and interest of the said parties of the first part therein."

Pursuant to the terms of the original lease of 1917, the Fosters, common grantors of these litigants, used the reserved thirty-foot strip along the north end of defendant's golf grounds as a way of access to their residence property; and when plaintiff purchased the

property in October, 1919, and thereafter he used the thirty-foot strip as his grantors had done and in accordance with the terms of his deed of conveyance. Plaintiff also, with the knowledge and acquiescence of defendant, spent a considerable sum of money in improving the private roadway, cutting the brush at an expense of $175, and grading the road and placing thereon several thousand yards of cinders at an expense of over $1,600. There was an informal, tentative agreement between plaintiff and the president of the golf club to the effect that since the members of the golf club used the roadway much more than plaintiff and made ruts in it which necessitated a continual expense to plaintiff, the golf club should pay part of the expense of maintenance of the roadway, but nothing came of it. The fact that plaintiff had acquired a grant of an easement for a way of convenience to his residence was notorious and well known to the officers and members of the defendant club, and so, too, was the fact of plaintiff's expenditures for the improvement of the roadway. In 1922, some three years after plaintiff acquired the property to which the easement was an appurtenance, plaintiff, at the suggestion of the managing committee of the golf club, took steps to keep the general public from using the roadway as a public highway, and with the approval of the golf club's committee, he put up signs at the entrances to the roadway. Those signs read:

"This is not a public thoroughfare, but a private road for the exclusive use of the undersigned and his guests, and for members of the Milburn Golf and Country Club.                                    A. C. JOBES."

On June 7, 1923, the golf club elected to exercise the option of purchase granted to it in 1919, and on July 7, 1923, a deed of conveyance from John R. Foster and the heirs of Mary Foster was executed to a trustee for the golf club.

Some time later, date not shown, defendant undertook to deprive plaintiff of the use of his private roadway. This lawsuit followed. Plaintiff's petition set up the pertinent facts, and he prayed that he be protected in his easement and for a perpetual injunction against defendant, its officers, servants and employees, restraining them from interfering with plaintiff's use of the thirty-foot strip across the north end of the golf club property, and plaintiff also prayed for a mandatory injunction requiring defendant to keep the private roadway and easement open for the plaintiff's use.

Defendant's answer joined issues on various matters not now ma-

terial, and set up its lease of February 6, 1917, its option of purchase of September 6, 1919, and its purchase of the golf club property in June, 1923, and emphasized the point that the option contract of 1919—

"Made no reservation or exception of a roadway, and that the land described in said option includes the tract of land in which the plaintiff claims to have acquired an easement for right-of-way purposes."

Defendant also alleged (and it was not disputed) that its option of purchase was filed for record in the office of the register of deeds on September 13, 1919, some three or four weeks before plaintiff purchased the Foster residence property with the easement pertaining thereto which is the subject of this action.

Trial by the court; evidence heard at length; findings of fact and judgment thereon in favor of plaintiff; defendant's motion for a new trial overruled; appeal.

In behalf of defendant it is urged that Jobes had record notice of defendant's option at the time he purchased the property and its appurtenant easement of a private roadway. It is also argued that plaintiff had actual notice of defendant's notorious possession of the roadway and actual notice of defendant's option to purchase. It is further argued for defendant that when defendant exercised its option and did purchase the property its rights related back to the date of its option. Around these points of argument, well fortified with excerpts from decided cases, defendant endeavors to persuade us that the trial court's judgment should be overturned. However, these contentions of defendant altogether ignore the significance of certain pertinent facts which were bound to make a persuasive appeal to the court of equity. Neither litigant was wanting in notice or knowledge of the rights of the other party. Plaintiff knew defendant had an option to purchase the golf grounds and twenty additional acres. He knew the Fosters had reserved a roadway over the north end of the golf grounds for the use of the west eighty acres which constituted their place of residence. Defendant also knew that the Fosters had specifically reserved out of the lease this particular private roadway and knew it was dealt with and recognized by the Fosters as an appurtenant way of convenient access to and from their eighty-acre residence property—as an easement over the golf grounds leased to defendant. Defendant knew that some four weeks after it had acquired an option to purchase the golf grounds "free and clear," plaintiff had purchased the west eighty acres, together with its appurtenant easement, and knew that the Fosters'

deed to plaintiff contained an express grant of the easement for a roadway over the north end of the land to which defendant held a lease and option to purchase. Defendant also knew that plaintiff exercised the right to use the roadway. It knew of and acquiesced in his draining and grading the roadway, cutting the brush on it, and causing it to be improved with hundreds of loads of cinders, and that it had been a matter of informal discussion between plaintiff and defendant's president that the defendant should contribute to the improvement and maintenance of the roadway, and defendant knew and approved, of plaintiff's assertion of his personal, private right as against the public in the use of the roadway. Giving all these incidents their proper significance, this court is inclined to hold that the grant of the option to purchase the golf grounds was no broader than the grant of the lease, and that the Fosters' obligation to convey the leased premises "free and clear" was not fairly susceptible of an interpretation that the thirty-foot strip expressly reserved in the lease for the convenient use of the adjacent eighty acres on the west was intentionally eliminated in the option by the words "free and clear." The option contract, fairly construed, discloses that aside from the twenty acres not here concerned, it was the intention of the Fosters and the defendant that the relation of lessor and lessee could be altered at the option of defendant into that of grantor and grantee of the identical property leased to defendant in 1917. We say the option contract is fairly susceptible of that construction. Moreover, and presenting a particular appeal to a court of equity, was the fact that defendant saw plaintiff enter into possession of that private roadway under his deed of 1919 which expressly conferred the use of the private roadway on plaintiff in language substantially similar to that in which that identical roadway had been reserved from the lease granted to defendant in 1917; and for nearly four years defendant suffered plaintiff to exercise dominion over the private roadway, cut the brush on it, grade and improve it at a cost of $1,600, without protest or claim of adverse right; and under elementary principles of estoppel the defendant cannot be heard to deny plaintiff's easement for a private roadway. So whether this controversy is disposed of by fair interpretation of the written instruments under which these rival litigants claim through a common grantor, or under principles of equitable estoppel, this court is bound to hold that the trial court did not err, and its judgment is affirmed.