No. 119,218

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

RAYMOND DEBEY and GINGER DEBEY,
*Appellees*,

v.

JAMES SCHLAEFLI, JAMES F. SCHLAEFLI TRUST, Dated 7/1/2001, and
ROBERTA A. SCHLAEFLI TRUST, Dated 7/1/2001,
*Appellants*.

SYLLABUS BY THE COURT

1.

An implied easement by reservation or grant requires several factors. First, a landowner must use his or her land in such a way that part of that land gives a benefit of a continuous, permanent, and apparent nature to another part of his or her land. This is also known as a "quasi-easement." The part of the land giving the benefit is known as the quasi-servient tenement, and the part of the land receiving the benefit is known as the quasi-dominant tenement.

2.

If a landowner sells a quasi-dominant tenement, the quasi-easement then becomes an implied easement and will be retained only if necessary for the reasonable enjoyment of the sold property.

3.

An implied easement by reservation or grant does not require strict necessity. Instead this type of implied easement is based on the intent of the parties and what expectations one party could reasonably foresee the other party had from the sale of the land.

1

4.

Generally, parties intend to continue using the land in the same way known to them to a considerable degree necessary to the continued usefulness of the land. The parties will be assumed to know and to contemplate the continuance of reasonably necessary uses which have so altered the premises as to make them apparent upon reasonably prudent investigation.

5.

The existence of an implied easement may be voided if it is subsequently overburdened by abnormal development of the quasi-dominant tenement. But an implied easement will be upheld when it is reasonably necessary for the enjoyment of the quasi-dominant tenement.

6.

Courts determine whether an implied easement has been overburdened by reviewing what the parties might reasonably have expected from future uses of the dominant tenement. What the parties might reasonably have expected is to be ascertained from the circumstances existing at the time of the conveyance. It is to be assumed that they anticipated such uses as might reasonably be required by a normal development of the dominant tenement. It is not to be assumed that they anticipated an abnormal development.

7.

Under the doctrine of equitable estoppel, courts may prevent a person from asserting his or her rights against another when the other detrimentally relied upon the voluntary conduct of the person now asserting rights. A party claiming equitable estoppel must show another party, by his or her acts, representations, admissions, or silence when he or she had a duty to speak, induced the claimant to believe certain facts existed. The

claimant must also show it rightfully relied and acted upon such belief and would now be prejudiced if the other person were allowed to deny the existence of such facts.

Appeal from Osborne District Court; PRESTON PRATT, judge. Opinion filed February 15, 2019. Affirmed.

*Tish Morrical*, of Hampton & Royce, L.C., of Salina, for appellants.

*Paul S. Gregory*, of Gregory & Gregory, of Osborne, for appellees.

Before SCHROEDER, P.J., STANDRIDGE, J., and WALKER, S.J.

WALKER, J.: James Schlaefli, the James F. Schlaefli Trust, and the Roberta A. Schlaefli Trust (Schlaeflis) appeal the district court's findings that Raymond DeBey and Ginger DeBey (DeBeys), who own property adjacent to Schlaeflis, have easements of various types needed to operate their seed business over Schlaeflis' adjoining land. Because we find that the district court properly applied the law and there is substantial competent evidence supporting the court's findings, we affirm.

FACTS

This case involves the disputed use of two tracts of property lying along U.S. Highway 24 just outside of and to the east of Downs in Osborne County, Kansas. The parties refer to them as the West tract (currently owned by Schlaeflis) and the East tract (currently owned by DeBeys). Twenty years before inheriting the land, James Schlaefli's father erected a building on the East tract. His father passed away in 2000. James and his brother inherited several pieces of property, including both the West and East tracts, with each owning an undivided one-half. The brothers traded property interests, and James acquired both the West and East tract. James and his wife transferred their ownership interests of the property into their trusts.

3

Immediately south of the West and East tracts is Highway 24. North of the two tracts of land is a large water diversion ditch. East of the East tract is additional land purchased by DeBeys from third parties who are not involved in this lawsuit. The West tract contains a house and several other buildings. At the eastern edge of the West tract is a building James used as his shop. Unless James was out of town, he was at his shop most days.

Highway 24 runs south of the two tracts of land, and there are two driveways. The first driveway is on the western part of the West tract and curves south of the house and James' shop. A dirt path runs from the north part of the tracts a few feet east of his shop. This dirt path then merges with the second driveway.

The second driveway is the primary source of this controversy. This driveway connects Highway 24 to the south and the dirt path. One branch of it curves west to the first driveway and the other branch curves east to the building James' father erected on the East tract. His father regularly used the second (eastern) driveway to travel from Highway 24 to his building on the East tract. When James inherited both tracts of land, he used the eastern driveway like his father did.

In 2006, Raymond DeBey rented the building on the East tract to run his bulk seed business close to Highway 24. James allowed Raymond to use the eastern driveway like James and his father had used it. James knew Raymond intended to run his seed business from the East tract. Raymond then bought the East tract from James in 2007 because he did not want to build seed bins on rented property. James also sold Raymond some farm equipment just east of the dirt path, on what both men believed to be the East tract owned by Raymond. Both men believed the two tracts of land were divided by the dirt path.

In 2007, Raymond built bulk seed tanks just to the east of the building built by James' father. Raymond also built a conveyor belt and other equipment to load seed for his customers. This equipment took considerable time and expertise to set up.

About three years later, Raymond's seed business was thriving, so he formed a limited liability company (LLC). The LLC purchased two pieces of property to the east of the East tract. Mid-Way Co-op owned one of the two properties. Mid-Way Co-op agreed to sell most of its property if it could keep its anhydrous plant, and Raymond agreed to provide water to it. East of the anhydrous plant is a field the LLC bought from a private land owner. The drainage ditch continues north across all of this land. To the east of the field is County Road 20th Avenue. By about 2010, Raymond owned the East tract purchased from James and the LLC owned all land east of that except for Mid-Way Co-op's anhydrous plant. The LLC paid annual rent to Raymond for using the East tract.

In 2012, the LLC expanded its seed business and erected a seed building to the east of the East tract but west of the anhydrous plant. Most of the LLC's seed business was operated in the seed building, but the East tract was still used to store seed in the building James' father built and in the seed tanks Raymond built.

The seed building is on land with a significantly higher elevation than Highway 24. There is not enough room for another driveway between the seed building and the anhydrous plant. Mid-Way Co-op is unwilling to share its driveway with the seed building traffic. The only other route for highway access is across the field to County Road 20th Avenue, which would require building an all-weather road to support heavy truck traffic. Currently, traffic to and from the seed building can only reach Highway 24 by traveling across the East tract and the eastern driveway connected to Highway 24.

Traffic to the seed building can be busy during seed time and includes local farm trucks and semi-trucks. Sometimes seed business traffic drives down the wrong driveway

and drives close to the house owned by Schlaeflis on the West tract. After 2007, James watched Raymond's seed business grow over the next five years, but he did not complain to Raymond about the business or traffic.

In 2017, James hired a surveyor and discovered the property line between the West and East tracts was about 30 feet further east, making the entirety of the eastern driveway part of James' West tract and placing some of Raymond's equipment on James' property. James tried to build a fence to stop Raymond from using the driveway. Raymond sued James, and the district court granted a temporary restraining order.

After a bench trial, the district court found the property line was where the surveyor said it was. The district court found Raymond had an implied easement by reservation or grant on the use of the eastern driveway. The district court also ruled Raymond's continued use of the driveway for himself and his business was reasonably necessary. The district court authorized additional use of the easement for the expanded seed business because it was an easement by estoppel. Finally, the court ruled Raymond's easement by estoppel extended to filling the bulk seed tanks on the West tract, which required temporary placement of grain augers and other equipment.

Schlaeflis have timely appealed from the district court's decision.

ANALYSIS

*Existence of an implied easement by reservation or grant*

Schlaeflis first argues that the district court erred when it found that DeBeys had an easement by necessity or by implication across the West tract owned by Schlaeflis. On review, this presents us with a mixed question of fact and law.

6

When reviewing a mixed question of fact and law, we apply a bifurcated review standard. The district court's factual findings are generally reviewed under the substantial competent evidence standard. Its conclusions of law based on those facts are subject to unlimited review. See *Gannon v. State*, 298 Kan. 1107, 1175-76, 319 P.3d 1196 (2014). "Substantial competent evidence is '"'evidence which possesses both relevance and substance and which furnishes a substantial basis of fact from which the issues can be reasonably be resolved.'"' [Citation omitted.]" *Wiles v. American Family Life Assurance Co.*, 302 Kan. 66, 73, 350 P.3d 1071 (2015).

There are several categories of easements, but the district court found Raymond had an implied easement by a reservation or grant. An implied easement by a reservation or grant requires several factors. *Smith v. Harris*, 181 Kan. 237, 248-49, 311 P.2d 325 (1957). First, a landowner must use his or her land in such a way that part of his or her land gives a benefit of a "continuous, permanent, and apparent nature" to another part of his or her land. 181 Kan. at 248. This is typically called a quasi-easement. The part of the land giving the benefit (such as the West tract) is known as the quasi-servient tenement, and the part of the land receiving the benefit (such as the East tract) is known as the quasi-dominant tenement. When the landowner sells the quasi-dominant tenement, the quasi-easement then becomes an implied easement and will be retained only if necessary for the reasonable enjoyment of the sold property. *Van Sandt v. Royster*, 148 Kan. 495, 502, 83 P.2d 698 (1938).

The Kansas Supreme Court has cautioned against confusing "necessary" in an implied easement by reservation or grant with another category of implied easement—an implied easement from a way of necessity. *Harris*, 181 Kan. at 249. An implied easement from a way of necessity is based on strict necessity, but strict necessity is not required in an implied easement by reservation or grant. Instead, an implied easement by reservation or grant is based on the intent of the parties and what expectations one party could reasonably foresee the other party had from the sale of the land. Generally, parties intend

7

to continue using the land in the same way known to them to "a considerable degree necessary to the continued usefulness of the land." 181 Kan. at 249. Additionally, "[t]he parties will be assumed to know and to contemplate the continuance of reasonably necessary uses which have so altered the premises as to make them apparent upon reasonably prudent investigation." 181 Kan. at 249.

Schlaeflis argue that DeBeys do not have an easement by necessity, but this misses the point made in *Harris* because the district court did not find DeBeys had an easement by necessity. Schlaeflis also argue DeBeys do not have an implied easement because DeBeys spent resources on expanding the seed business and purchasing adjacent land which made it "reasonably foreseeable" that increased business traffic would necessitate additional access to Raymond's expanded enterprise. Schlaeflis complain that DeBeys should have, but did not, explore whether they could access County Road 20th Avenue or Highway 24. In making this argument, Schlaeflis rely on *Horner v. Heersche*, 202 Kan. 250, 447 P.2d 811 (1968).

In *Heersche*, the Horner family appealed a district court order finding they did not have an easement by necessity because they had an exclusive remedy under K.S.A. 68-117, which allowed landlocked property owners to compel their county to create access to a public roadway. The *Heersche* court reviewed conflicting authority on implied easements by way of necessity. Ultimately, the Kansas Supreme Court found the Horner family was entitled to an implied easement by way of necessity and remanded the case to the trial court. 202 Kan. at 257-58.

*Heersche* is inapplicable because the two issues raised there are not issues in this case. No one is claiming K.S.A. 68-117 is a remedy available to Raymond. Additionally, as noted above, in our case the district court did not find Raymond had an implied easement by way of necessity.

8

Instead the district court followed precedent in *Harris*, 181 Kan. at 249. The district court found James and his father created and used a quasi-easement to access the East tract from the West tract and Highway 24. The East tract was the quasi-dominant tenement because it benefitted from access to the West tract. The West tract was the quasi-servient tenement because it was used to benefit the East tract. The district court found this quasi-easement was apparent and continuous because James' father built a building on the East tract and the easement was necessary to access the East tract.

Following up on this initial finding, the district court held James rented then sold the East tract to Raymond. With that sale, the court concluded Raymond gained an implied easement by grant of access from the East tract through the West tract. The court reasoned Raymond purchased the East tract to expand his bulk seed business and James knew of this when he sold Raymond the East tract. The district court concluded the easement was reasonably necessary for the continued usefulness of the East tract because there was not enough space between the east driveway and the anhydrous plant driveway for Raymond to build a new driveway. Additionally, building to the north of the plant and across the field to either Highway 24 or County Road 20th Avenue was not possible due to the elevation of the property and the requirement of a fairly lengthy all-weather road.

Substantial competent evidence supports the district court's findings that DeBeys have an implied easement by reservation or grant. James and his father both created a quasi-easement when they owned the West and East tracts. See *Royster*, 148 Kan. at 502. Both men used the eastern driveway to access the building on the East tract. The eastern driveway gives a benefit of a "continuous, permanent, and apparent nature" to the East tract—accessibility to Highway 24. See *Harris*, 181 Kan. at 248. After James sold the East tract to Raymond, Raymond could use the implied easement to the eastern driveway only if it was necessary for his reasonable enjoyment of the East tract. See *Royster*, 148 Kan. at 502.

9

As our courts have observed, for something to be "necessary" does not mean that it is a "strict necessity." Instead, it is based on what expectations James could reasonably foresee Raymond had from the sale of the land. Additionally, "[t]he parties will be assumed to know and to contemplate the continuance of reasonably necessary uses which have so altered the premises as to make them apparent upon reasonably prudent investigation." *Harris*, 181 Kan. at 249.

At trial, James testified he knew Raymond bought the land for his seed business. He also testified he was at his own shed every day he was not on vacation. James' shed is situated next to the East tract in such a way that the ingress to and egress from the East tract by business traffic via the eastern driveway would be easily visible. James testified he watched the LLC build the seed building to the east of the East tract. With reasonably prudent investigation, James contemplated Raymond's continued use of the East tract to support his successful seed business. See *Harris*, 181 Kan. at 249.

In summary, we find that the district court correctly applied the law in determining the standards for an implied easement by reservation or grant of access. Substantial competent evidence supports the district court's finding that DeBeys have an implied easement by reservation or grant to access the East tract from Highway 24 by using the eastern driveway.

*Easement overburdening*

As the second issue on appeal, Schlaeflis argue the district court erred because Raymond's seed building activity was not on the East tract itself but was constructed on the property even further east which Raymond's LLC later acquired from Mid-Way Co-op and another private owner. Because this significant expansion was not in existence at the time of the original conveyance from James to Raymond, Schlaeflis contend this increased activity overburdened any easement DeBeys arguably might be entitled to.

10

Neither party has cited any Kansas cases addressing whether an easement can be voided by overburdened activity, and we have likewise found none. Schlaeflis cite to the Restatement (First) of Property § 484, comment (b) (1944), and to *Trattar v. Rausch*, 154 Ohio St. 286, 292, 95 N.E.2d 685 (1950), to argue Raymond overburdened the easement. But after careful review we believe both citations support the district court's order. Section 484, comment (b) explains an easement by implication

"is to be measured . . . by such uses as the parties might reasonably have expected from future *uses* of the dominant tenement. What the parties might reasonably have expected is to be ascertained from the circumstances existing at the time of the conveyance. It is to be assumed that they anticipated such *uses* as might reasonably be required by a normal development of the dominant tenement. It is not to be assumed, however, that they anticipated an abnormal development." (Emphasis added.) Restatement (First) of Property § 484 (1944).

Likewise, *Rausch* explains the "use to which one part of the property has been subjected for the benefit of another part will not be recognized as an implied easement on a severance of ownership unless the use is reasonably necessary to the enjoyment of the dominant estate." 154 Ohio St. at 292.

Like *Harris*, *Rausch* and Restatement (First) of Property § 484, comment (b) support the conclusion that an implied easement will be upheld when it is reasonably necessary for the enjoyment of the East tract and the development is reasonably ascertained by circumstances existing at the time of the conveyance. See *Harris*, 181 Kan. at 249.

Schlaeflis claim the use of the easement cannot be for development on land adjacent to the dominant tenement. But we believe this misses the point because the focus of maintaining an easement is on the use of the land, not just the development. See Restatement (First) of Property § 484. When Raymond bought the East tract, he intended

11

to expand his seed business. James could reasonably foresee this use. James knew Raymond stopped renting the East tract and bought it in 2007 to expand his business. Raymond bought the East tract from James in 2007 because he did not want to build seed bins on rented property. Although the seed building was built on the LLC's adjacent land, James could reasonably foresee a successful seed business would have increased traffic to and from the East tract, regardless of any expansion on adjacent lands. Raymond's use of the easement to support his expanded seed business is what might be reasonably expected when James sold the East tract to Raymond for Raymond's seed business.

In summary, we believe that Raymond's expansion of his seed business constitutes the kind of "normal development of the dominant tenement" which is embraced with favor by Restatement (First) of Property § 484 and not the kind of "abnormal development" of an entirely different kind and character which might, in fact, overburden the easement. We believe substantial competent evidence supports the district court's rejection of Schlaeflis' claims.

*Easement by estoppel*

Schlaeflis raise two allegations of error based upon the district court's ruling that they were equitably estopped from denying DeBeys' claims of an implied easement over their property.

The first of the district court's rulings was that Schlaeflis were estopped from complaining about use of the easement to benefit the newest seed building constructed on property acquired from Mid-Way Co-op and the other private owner. The second ruling by the court they complain of was its order estopping them from denying an easement allowing Raymond to fill and otherwise utilize the bulk seed tanks and equipment which were erroneously built on Schlaeflis' West tract. Each of these claims will be dealt with in turn after a general discussion of equitable estoppel.

12

Under the doctrine of equitable estoppel, courts may prevent a person from asserting his or her rights against another when the other detrimentally relied upon the voluntary conduct of the person now asserting rights. A party claiming equitable estoppel must show another party, by his or her acts, representations, admissions, or silence when he or she had a duty to speak, induced the claimant to believe certain facts existed. The claimant must also show it rightfully relied and acted upon such belief and would now be prejudiced if the other person were allowed to deny the existence of such facts. *Steckline Communications, Inc. v. Journal Broadcast Group of KS, Inc.*, 305 Kan. 761, 769, 388 P.3d 84 (2017).

Kansas courts have rarely ruled on an easement by estoppel. In *Jobes v. Milburn Golf and Country Club*, 121 Kan. 264, 246 P. 969 (1926), the Kansas Supreme Court upheld the trial court's findings in favor of Jobes. Milburn Golf and Country Club leased land with an option to buy from a family. The lease allowed the family to reserve a 30-foot easement—a road—on the leased land. The family maintained the easement for two years and then sold its property to Jobes. Jobes maintained the easement, and over the next five years he worked with the country club to restrict the easement's use to Jobes and golf club members. Sometime later, the country club attempted to stop Jobes' use of the easement. Jobes petitioned for a permanent injunction against the country club, and the trial court granted Jobes the injunction. The Kansas Supreme Court upheld the trial court under either "fair interpretation of the written instruments . . . or under principles of equitable estoppel." 121 Kan. at 268.

In 2004, the Kansas Court of Appeals addressed an easement by estoppel. *Irick v. Marshall*, No. 90,688, 2004 WL 1489051 (Kan. App. 2004) (unpublished opinion). There, the Irick family conveyed a section of property to another family but did not convey the West 60 tract. Eventually the Marshalls purchased the conveyed land from a commercial lender, but the lender mistakenly added the West 60 tract into the property sold to the Marshalls in 1992. The Marshalls regularly used a road across the West 60

13

tract. They graded it, added materials to the road, mowed the area, cleaned the ditches, and installed culverts. The Marshalls also paid taxes on the West 60 tract since 1992. The Iricks argued the maintenance was insufficient but did nothing to discourage the Marshalls from maintaining the road or paying taxes. The Iricks also testified they made no road improvements since 1992. Based on those facts, and relying on *Jobes*, the *Irick* court found sufficient competent evidence to uphold the trial court's easement by estoppel. 2004 WL 1489051, at *2.

Schlaeflis first argue that an easement by estoppel is inappropriate and not supported by substantial competent evidence. They claim James did not have a duty to stop Raymond from developing the seed building because the development occurred on land James never owned. They also argue Raymond did not do enough to maintain the easement, alleging Raymond spent less than $1,000.

There is substantial competent evidence to support the district court's findings of equitable estoppel. Although James had no duty with regard to the construction of the seed building on property further to the east, James did have a duty with regard to the use of the easement. He knew the seed business was expanding and therefore the traffic across the easement was growing. James testified he was at his shop almost every day and watched Raymond's seed business develop. James made no objections to the use of the easement for 10 years. James knew of the ongoing traffic and, by his silence, he induced Raymond to believe the easement was available to his customers. Raymond has no other route to Highway 24 except through the eastern driveway. He would therefore be prejudiced but for an easement by estoppel.

Additionally, Raymond testified he maintained the road after he purchased the East tract in 2007. He used asphalt milling as needed and mowed the property. He also extended the culvert for the eastern driveway and maintained it after rain. A Kansas Department of Transportation employee testified Raymond extended the culvert. James

14

testified he did see Raymond putting out rocks in the ditch but did not observe Raymond completing other maintenance. James also testified he last put millings down on the driveway in the 1990s. James' family member testified the cost of the culvert was likely $200. No one testified about the cost of the milling or mowing. Much like in *Irick*, Raymond maintained the easement and James acquiesced to Raymond's maintenance. See *Irick*, 2004 WL 1489051, at *2. Therefore, we find substantial competent evidence supports the district court's findings that Schlaeflis should be equitably estopped from contesting the easement for the benefit of Raymond's expanded seed business.

As noted above, Schlaeflis also argue that the district court erred in finding an easement by estoppel to allow Raymond to fill and service his bulk seed tanks. In 2007, Raymond installed the bulk seed tanks and equipment on what was believed to be the East tract but in fact was revealed to be on the West tract by the surveyor. Before the survey, both parties believed the property line was further west than it is in actuality. As the landowner, James had a duty to act if he wished to have Raymond remove his seed tanks or intended to deny access to them. See *Irick*, 2004 WL 1489051, at *2. But James remained silent until 2017. His silence induced Raymond to continue to complete bulk seed fills on part of James' land. DeBeys would now be prejudiced if they were required to move the tanks and equipment or if they lost access to them. Evidence at trial indicated these are not minor improvements which can be easily moved. In fact, it took considerable time and expertise to set these up.

Once again, substantial competent evidence supports the district court's findings of equitable estoppel of Schlaeflis from denying an easement to DeBeys for purposes of filling and otherwise utilizing the bulk seed tanks.

*Attorney fees*

Schlaeflis' next claim on appeal is that they should be awarded attorney fees since the case was wrongly decided by the district court. But under K.S.A. 60-905, attorney fees are only awarded when an injunction should not have been awarded. The injunction ordered by the district court was appropriate, and therefore Schlaeflis are not entitled to attorney fees.

*Common-law right of access to Highway 24*

In their brief, DeBeys allege they have a common-law right of access over Schlaeflis' property.

The Kansas Supreme Court explained the common-law right of access in *Sebree v. Board of Shawnee County Comm'rs*, 251 Kan. 776, 781, 840 P.2d 1125 (1992). This right exists when one's property abuts an existing street or highway. The landowner has two kinds of rights:

> "'a public right which he enjoys in common with all other citizens, and certain private rights which . . . include certain easements, or appurtenant easements, such as the rights of access, of view, of light and air, and others. These rights are property of which he may not be deprived without his consent, except on full compensation and by due process of law.'" 251 Kan. at 781.

The Sebree family filed a quiet title action to clear the access to Old Highway 40 because New Highway 40 would run diagonal across their land and they apparently wanted to reclaim the old land. The Dreashers' predecessors built a spur road to create a right of way to access Old Highway 40. The spur road encroached onto the Sebree property by about 20 feet. Ultimately, the Kansas Supreme Court found the Dreasher

16

family did have a common-law right of access to Old Highway 40 because they were abutting landowners. 251 Kan. at 785.

The district court in this case did not address the common-law right of access. In light of our ruling on the other issues, this point has become moot in the specific context of the case. However, we do note from the evidence that DeBeys appear to be correct on this issue and have a common-law right of access to Highway 24. The evidence clearly shows their property abuts Highway 24. As such, access to it cannot be removed without full compensation and except by due process of law. See *Sebree*, 251 Kan. at 781.

Affirmed.