NOT DESIGNATED FOR PUBLICATION

No. 124,444

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

JEFFREY H. CARNER,
*Appellee,*

v.

OGG-DAUGHARTHY, LLC,
*Appellant.*

MEMORANDUM OPINION

Appeal from Franklin District Court; ERIC W. GODDERZ, judge. Opinion filed April 29, 2022. Affirmed.

*R. Scott Ryburn*, of Anderson & Byrd, LLP, of Ottawa, for appellant.

*Darby VanHoutan*, Harris Kelsey, Chtd., of Ottawa, for appellee.

Before POWELL, P.J., GREEN, J., and RICHARD B. WALKER, S.J.

PER CURIAM: Jeffrey H. Carner filed a declaratory judgment action against Ogg-Daugharthy, LLC, seeking an easement for a natural gas pipeline and a water line that ran across 140 acres owned by Ogg-Daugharthy and serviced Carner's house on an adjacent 17-acre lot. The district court denied Ogg-Daugharthy's motion for summary judgment and, after a bench trial, granted Carner an easement for the natural gas pipeline and the water line. Ogg-Daugharthy only appeals the district court's ruling on the natural gas pipeline, arguing the district court erred. Following a review of the record, we affirm.

1

Russel Daugharthy Sr., and Dorothy Daugharthy (the Daugharthys) bought 140 acres and an adjoining 17-acre lot in 1962 and built a home on the 17-acre lot. They granted an easement to Cities Services Gas Company in 1973 to build a natural gas line; in return, the gas company granted the Daugharthys permission to tap into the gas line and receive natural gas at their house. The Daugharthys installed a small pipeline running from the gas meter, across the 140-acre lot, to their house on the 17-acre lot. The pipeline has provided gas to heat the house since that time.

The Daugharthys had three children—Russel Daugharthy Jr., Sandra Ogg, and Terri Carner. When Russel Sr. died in 1985, he left half of his undivided 1/2 interest in the real estate to Dorothy in the form of a life estate, with the remaining half divided equally between the three children. When Dorothy died in 1999, her undivided 1/2 interest in the 17-acre lot and the house passed to Terri. Terri then deeded her interest in the 17 acres to herself and her husband, Carner. In 2000, Russel Jr., Angela Daugharthy (Russel Jr.'s wife), Sandra, and Leslie Ogg (Sandra's husband) deeded their remaining interests in the 17 acres to Terri and Carner. Carner, Terri, and their son lived at the house until the couple's divorce in 2019, when Terri conveyed the entirety of the 17 acres and the house to Carner.

In 2019, Russel Jr. and Sandra began plans to sell the 140-acre lot, owned in part by the three siblings—who had each inherited a 1/6 interest from Russel Sr.—and in part by the Dorothy F. Daugharthy Revocable Living Trust, which owned an undivided 1/2 interest. Under the Trust, Russel Jr., Sandra, and Terri were the beneficiaries. In September 2019, Russel Jr. and Sandra called a meeting of the Trustees and voted to sell the Trust's interest in the 140 acres. Although at first reluctant, Terri agreed to sell her interest in the 140 acres and provide marketable title to the property to avoid conflict within the family. On advice from the Trust's attorney, the parties also had Carner sign

the Contract for Purchase of Real Estate and Quitclaim Deed executed in February 2020 to help Terri avoid any issues with her siblings over the 140 acres. Although the details are not in the record, ultimately the 140 acres was transferred to Ogg-Daugharthy, LLC, a limited liability company owned by Russel Jr., Angela, Sandra, and Leslie. Ogg-Daugharthy would eventually subdivide and sell the property.

In October 2020, Ogg-Daugharthy sent Carner a letter informing him a plumber would be disconnecting and capping the gas line to the property on December 2, 2020. Carner filed a petition for declaratory judgment and temporary injunction in December 2020. On April 16, 2021, Ogg-Daugharthy moved for summary judgment on Carner's claim. The district court denied the motion.

On September 7, 2021, the district court held a bench trial on Carner's request for an easement for the natural gas pipeline and a water line that also ran across the 140 acres and serviced the 17 acres. Carner testified that he always believed he would continue to live in the house on the 17 acres and use natural gas from the pipeline that ran across the 140 acres to heat his house. The pipeline is located above ground in certain spots on the 140 acres. Russel Jr. and Sandra admitted they knew the pipeline existed and that it had been used at the house on the 17 acres since their parents lived there. The district court granted an easement to Carner for both the water and gas lines, explaining that the gas pipeline was a necessity for Carner to heat and enjoy his home.

Ogg-Daugharthy appeals both the district court's denial of summary judgment and its ruling granting Carner an easement for the gas pipeline.

ANALYSIS

Ogg-Daugharthy argues three issues on appeal. First, Ogg-Daugharthy asserts the district court erred in denying its motion for summary judgment. Second, Ogg-

3

Daugharthy argues the district court did not employ the proper legal standard at trial to determine whether an implied easement existed. Third, Ogg-Daugharthy asserts substantial competent evidence did not support the district court's finding of an implied easement.

I.      DID THE DISTRICT COURT ERR IN DENYING OGG-DAUGHARTHY'S SUMMARY JUDGMENT MOTION?

Ogg-Daugharthy makes two arguments on the district court's denial of its summary judgment motion. First, Ogg-Daugharthy asserts that under K.S.A. 58-2202, Carner conveyed his entire interest in the 140 acres and cannot now claim an easement. Second, Ogg-Daugharthy argues equitable estoppel precluded Carner from claiming an implied easement. Carner answers that an explicit reservation or grant in writing is unnecessary for an implied easement. Carner also argues equitable estoppel should not bar his claim because there is no evidence he intended to deceive Ogg-Daugharthy.

*Issue Not Preserved*

Although Carner fails to raise this point, typically

"'a party may not "appeal an order denying summary judgment after a full trial on the merits" because that "order retains its interlocutory character as simply a step along the route to final judgment." . . . "Once the case proceeds to trial, the full record developed in court supersedes the record existing at the time of the summary judgment motion."'
     "A party who has lost on summary judgment . . . can preserve any legal issues on appeal by including them into a trial motion for judgment as a matter of law. [Citations omitted.]" *Budd v. Walker*, 60 Kan. App. 2d 189, 197, 491 P.3d 1273 (2021).

That was not done here, so we find Ogg-Daugharthy failed to preserve its appeal of the district court's denial of summary judgment.

4

Nevertheless, even if this issue had been properly preserved, for reasons we will explain, we agree with Carner that the district court properly denied Ogg-Daugharthy summary judgement.

*Standard of Review*

"Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, admissions on file, and supporting affidavits show that no genuine issue exists as to any material fact and the moving party is entitled to judgment as a matter of law. The district court must resolve all facts and reasonable inferences drawn from the evidence in favor of the party against whom the ruling is sought. When opposing summary judgment, a party must produce evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issue in the case. Appellate courts apply the same rules and, where they find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment is inappropriate. Appellate review of the legal effect of undisputed facts is de novo. [Citation omitted.]" *GFTLenexa, LLC v. City of Lenexa*, 310 Kan. 976, 981-82, 453 P.3d 304 (2019).

*Analysis*

Ogg-Daugharthy moved for summary judgment, arguing that as a matter of law the undisputed facts show it was entitled to judgment on Carner's implied easement claim. See K.S.A 2020 Supp. 60-256(a). The district court denied the motion, finding there were disputed questions of fact on the parties' intent and the meaning of the contract. Ogg-Daugharthy argues this finding was erroneous.

A district court correctly denies summary judgment when a genuine issue of material fact exists. *Siruta v. Siruta*, 301 Kan. 757, 766, 348 P.3d 549 (2015). An issue of fact is genuine only if it has legal controlling force on the controlling issue. An immaterial, disputed question of fact does not preclude summary judgment. Put another

way, if resolution of the disputed fact "could not affect the judgment, it does not present a genuine issue of material fact." *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, 934, 296 P.3d 1106 (2013). This standard prevents a district court from deciding issues of material fact on summary judgment, whether the claim is one in equity or one in law. *Stechschulte v. Jennings*, 297 Kan. 2, Syl. ¶ 1, 298 P.3d 1083 (2013).

If the moving party shows an essential element of the nonmoving party's claim is not supported by facts, the nonmoving party "'has the affirmative duty to come forward with facts to support its claim, although it is not required to prove its case.'" *Drouhard-Nordhus v. Rosenquist*, 301 Kan. 618, 623, 345 P.3d 281 (2015). Direct evidence is not necessary to survive summary judgment; circumstantial evidence is enough. *Siruta*, 301 Kan. at 767. But speculation is insufficient to avoid summary judgment. *Chesbro v. Board of Douglas County Comm'rs*, 39 Kan. App. 2d 954, 960, 186 P.3d 829 (2008).

A.     *K.S.A. 58-2202*

Ogg-Daugharthy argues the district court erred in denying its summary judgment motion because K.S.A. 58-2202 precluded Carner from claiming an implied easement.

K.S.A. 58-2202 states:

> "The term 'heirs,' or other words of inheritance, shall not be necessary to create or convey an estate in fee simple; and every conveyance of real estate shall pass all the estate of the grantor therein, unless the intent to pass a less estate shall expressly appear or be necessarily implied in the terms of the grant."

Ogg-Daugharthy argues Carner and Terri sold the 140 acres "'free of all encumbrances and without exceptions.'" Ogg-Daugharthy asserts the real estate contract and the quitclaim deed ended Carner's and Terri's entire interest in the 140 acres. In

6

support of its argument, Ogg-Daugharthy cites emails between the parties' counsels, the real estate contract, and the quitclaim deed.

The district court found there was a disputed question of fact on the intent of the parties and on the meaning of the contract. For these reasons, it denied the summary judgment motion.

Contrary to Ogg-Daugharthy's assertion, K.S.A. 58-2202 does allow for a reservation from passing the entire estate when the conveyance does not expressly denominate it if the intent to do so is "necessarily implied in the terms of the grant."

The intent of a party to a contract is a question of fact. *U.S.D. No. 446 v. Sandoval*, 295 Kan. 278, 282, 286 P.3d 542 (2012). Here, it is also a material fact. See *Van Sandt v. Royster*, 148 Kan. 495, 500-501, 83 P.2d 698 (1938) ("An easement created by implication arises as an inference of the intentions of the parties to a conveyance of land."). The intent is determined "from the circumstances under which the conveyance was made rather than from the language of the conveyance." 148 Kan. at 501.

The district court correctly identified that the intent of the parties was a factual issue. Carner, in his amended petition and his reply to the summary judgment motion, asserted he did not intend to sell his rights to the natural gas pipeline.

The record supports a finding that there was a genuine issue of material fact. Carner controverted the assertion that the quitclaim deed constituted waiver of any potential right to an easement. Carner attached interrogatory answers to his response to the summary judgment motion. Ogg-Daugharthy admitted Russel Jr. participated in installing a portion of the natural gas pipeline. It also admitted Russel Jr. and Sandra had known about the pipeline since its installation. Carner also provided an affidavit from

Terri where she stated she would not have sold her share of the 140 acres if she knew it would cause issues with the natural gas pipeline.

As the district court found, there is a genuine dispute over the intent of the parties in selling the 140 acres. The parties' intent also affects the meaning of the contract. The parties presented a genuine issue on whether an easement for the natural gas pipeline across the 140 acres to provide natural gas to Carner's house was intended as part of the sales agreement. As the better practice is for a district court to deny summary judgment when the question of parties' intent is involved, we conclude the district court did not err in denying summary judgment. See *Hill v. State*, 310 Kan. 490, 520, 448 P.3d 457 (2019) ("A court should be cautious in granting a motion for summary judgment when resolution of the dispositive issue requires it to determine the state of mind of one or both of the parties.").

B.    *Equitable estoppel*

Ogg-Daugharthy's second summary judgment argument asserts the district court erred when it did not find Carner's easement claim barred by equitable estoppel. Ogg-Daugharthy makes two equitable estoppel arguments. First, Carner was equitably estopped because he made several representations that the sale of the 140 acres was a conveyance of fee simple title without any reservations. Second, granting Carner an easement for the natural gas line would be unfair when Carner had previously demanded that Russel Jr. and Angela stop using his driveway.

> "'Equitable estoppel is the effect of the voluntary conduct of a person whereby he is precluded, both at law and in equity, from asserting rights against another person relying on such conduct. A party asserting equitable estoppel must show that another party, by its acts, representations, admissions, or silence when it had a duty to speak, induced it to believe certain facts existed. It must also show it rightfully relied and acted upon such belief and would now be prejudiced if the other party were permitted to deny the

8

existence of such facts.' [Citations omitted.]" *Steckline Communications, Inc. v. Journal Broadcast Group of KS, Inc.*, 305 Kan. 761, 769, 388 P.3d 84 (2017).

Equitable estoppel focuses on one party's detrimental reliance on another party's conduct. The party asserting equitable estoppel will not prevail where facts are ambiguous or can be construed multiple ways. Equitable estoppel cannot exist if one of its elements is missing. 305 Kan. at 770.

Here, there is a genuine dispute on the intent of the parties when entering into the real estate contract. Carner did not attempt to hide the existence of the pipeline or his intent to keep using it. The pipeline has existed on the 140 acres for almost 50 years. The pipeline is partly above ground, and Russel Jr. helped install a section of it. Ogg-Daugharthy was aware of the pipeline, and Carner never represented that he would stop using the natural gas pipeline to heat his house on the 17 acres. Ogg-Daugharthy did not show Carner induced it to believe certain facts existed or that it relied on those facts.

Ogg-Daugharthy's second equitable estoppel argument based on the driveway likewise lacks merit. Ogg-Daugharthy asserts that because Carner demanded that the Daugharthys stop using his driveway—which Ogg-Daugharthy claimed the Daugharthys had used for over 25 years to access their property, forcing them to spend money to build a new driveway—it is unfair for him to demand an easement for the natural gas pipeline. The use of Carner's driveway is not at issue. Ogg-Daugharthy never filed any claim seeking its own easement. Thus, use of Carner's driveway is not relevant to his requested easement.

Equitable estoppel does not bar Carner's easement claim.

II.     DID THE DISTRICT COURT USE THE PROPER LEGAL STANDARD TO DETERMINE AN IMPLIED EASEMENT EXISTED?

Ogg-Daugharthy asserts the district court used the wrong legal standard to determine an implied easement existed. Ogg-Daugharthy argues no Kansas case has held access to natural gas a necessity and the district court cited no case law to support its "hybrid standard" for an implied easement by necessity.

*Standard of Review*

The district court's legal standard used in determining the existence of an implied easement is a legal issue we review de novo. See *Stroda v. Joice Holdings*, 288 Kan. 718, 727, 207 P.3d 223 (2009).

*Analysis*

After being told the natural gas pipeline would be turned off and capped, Carner sued for declaratory relief, seeking a judgment granting him an easement for the pipeline. See K.S.A. 60-1707.

An implied easement has no express language, and external evidence of intent helps determine whether it exists. *Stroda*, 288 Kan. at 721. An implied easement "arises as an inference of the intentions of the parties to a conveyance of land. The inference is drawn from the circumstances under which the conveyance was made rather than from the language of the conveyance." *Van Sandt*, 148 Kan. at 500-01. Either the conveyor or the conveyee may have an implied easement. 148 Kan. at 501.

10

Kansas recognizes the common-law rule that implies a way of necessity when a grantor either conveys or retains a portion of the land which would be otherwise inaccessible. *Horner v. Heersche*, 202 Kan. 250, 252-53, 447 P.2d 811 (1968).

> "'The way, in the one case, in contemplation of law, is granted by the deed; and in the other case, reserved. And although it is called a way of necessity, yet in strictness, the necessity does not create the way, but merely furnishes evidence as to the real intention of the parties. For the law will not presume, that it was the intention of the parties, that one should convey land to the other, in such manner that the grantee could derive no benefit from the conveyance; nor that he should so convey a portion as to deprive himself of the enjoyment of the remainder. The law, under such circumstances, will give effect to the grant according to the presumed intent of the parties.'" 202 Kan. at 253.

In its ruling following the bench trial, the district court discussed implied easements by necessity and implied easements by reservation. The parties discuss both types of implied easements in their briefs.

An easement by necessity or by "'way of necessity'" is an implied easement that "must be one of *strict necessity*. . . . 'An easement of necessity may be impliedly granted or reserved.'" *Smith v. Harris*, 181 Kan. 237, 248, 311 P.2d 325 (1957). While easements by necessity arise most often in connection with accessing property, they are not limited to only those such easements. "'The implication of easements of necessity is an application of the rule that wherever one conveys property he also conveys whatever is *necessary for its beneficial use and enjoyment*, and retains whatever is *necessary for the use* of the land retained." 181 Kan. at 248. An implied easement by necessity is based on the parties' inferred intent. The parties' intent is determined from the terms of the instrument transferring property and the circumstances surrounding the transaction. No implied easement is made where it is shown the parties do not intend one. An easement

by necessity is more readily implied in favor of the grantee than the grantor. 181 Kan. at 248.

Easements by necessity cannot be found in an express grant. They must be based on an implied grant or reservation and require a unity of ownership of the alleged dominant and servient estates. "'[N]o one can have a way of necessity over the land of a stranger.'" 181 Kan. at 248.

> "The pertinent law of such a situation is quite simple. Whenever the owner of a tract of land chooses to divide and sell a part of it, and a way of access over the part he retains is necessary to the beneficial use of the part he sells, such a way of necessity will pass as an appurtenance to the part sold, without being expressly stated in the deed of conveyance, unless the situation of the part sold, or the purpose for which it is to be used or granted, shows that no such grant of a way of necessity was intended. [Citation omitted.]" *Moll v. Ostrander*, 124 Kan. 757, 760, 262 P. 592 (1928).

An easement of necessity exists on the principle that the grant of a thing would not render the thing granted practically useless. 124 Kan. at 760.

An easement by necessity requires more than mere convenience. If the claimant can obtain a means of access at a reasonable expense without entering the claimant's neighbor's property, no implied easement by necessity exists. *Horner*, 202 Kan. at 255.

The other easement discussed by the district court was an implied easement by reservation or grant. Such an implied easement must be apparent and continuous.

> "'Where the owner of an entire tract of land or of two or more adjoining parcels employs a part thereof so that one derives from the other a benefit or advantage of a continuous, permanent, and apparent nature, and sells the one against which such quasi easement exists, such easement, if necessary to the reasonable enjoyment of the property retained, is, under what is perhaps the more generally accepted rule, impliedly reserved to

the grantor, no distinction being made between the circumstances under which an easement is regarded as impliedly granted and those under which one is regarded as impliedly reserved.'

"... The term '*apparent*' ... is used in its common and ordinary sense, meaning visible, capable of being seen or obvious upon inspection." *Smith*, 181 Kan. at 248-49.

An implied easement by a reservation or grant requires several factors. First, a landowner must use the land in a manner that part of the land

"gives a benefit of a 'continuous, permanent, and apparent nature' to another part of his or her land. This is typically called a quasi-easement. The part of the land giving the benefit ... is known as the quasi-servient tenement, and the part of the land receiving the benefit ... is known as the quasi-dominant tenement. When the landowner sells the quasi-dominant tenement, the quasi-easement becomes an implied easement and will be retained only if necessary for the reasonable enjoyment of the sold property. [Citations omitted.]" *DeBey v. Schlaefli*, 56 Kan. App. 2d 813, 817-18, 437 P.3d 1011 (2019).

Care must be taken to not confuse the term

"'necessary' in an implied easement by reservation or grant with ... an implied easement [by] way of necessity. An implied easement [by] necessity is based on strict necessity, but strict necessity is not required in an implied easement by reservation or grant. Instead, an implied easement by reservation or grant is based on the intent of the parties and what expectations one party could reasonably foresee the other party had from the sale of the land." 56 Kan. App. 2d at 818.

It is assumed parties know and contemplate "'the continuance of reasonably necessary uses which have so altered the premises as to make them apparent upon reasonably prudent investigation.'" 56 Kan. App. 2d at 818. Parties are also assumed to intend the continuance of uses known to them which are necessary to the land's continued usefulness. *Smith*, 181 Kan. at 249.

The district court here recognized that implied easements exist for times when the parties may have forgotten, or did not think, to include the easements in the conveyance of property. The district court noted a consideration is whether the land contained an "obvious preexisting use." The district court found the use of natural gas to heat the home by Carner was not a convenience, but a necessity. The district court did not believe Carner should bear the expense to install a replacement heating system.

Ogg-Daugharthy challenges the district court's statement that there was a hybrid easement not based on strict necessity. Ogg-Daugharthy asserts there is no such easement recognized in Kansas law.

While our research has revealed no implied easement called a "hybrid easement" in Kansas law, it is clear from the district court's discussion that the district court was speaking of an implied easement of reservation or grant. The district court noted this hybrid easement was not one of strict necessity, but one where there would be extreme hardship or some type of burden without the easement. The district court also described this easement as one based on prior use and one where both parties knew the easement was there. The district court found the natural gas pipeline was necessary for the use and enjoyment of Carner's land.

Without using the exact terminology, the district court applied the standard for an implied easement by reservation or grant. An implied easement by reservation or grant is a recognized implied easement. See 181 Kan. at 248. The district court applied the correct legal standard in finding an implied easement existed.

14

III.   DID SUBSTANTIAL COMPETENT EVIDENCE SUPPORT THE DISTRICT COURT'S FINDING OF AN IMPLIED EASEMENT?

Finally, Ogg-Daugharthy asserts there was not substantial competent evidence at trial to support the district court finding an implied easement existed for the natural gas pipeline. Ogg-Daugharthy claims natural gas is not a necessity because Carner could use propane or electricity as a heating source. Carner replies that alternative sources of heat would be expensive to install and more expensive to use than natural gas, which the house has used for almost 50 years.

*Standard of Review*

The district court's findings of fact are reviewed to determine whether the findings are supported by substantial competent evidence and are sufficient to support its conclusions of law. "Substantial evidence is such legal and relevant evidence as a reasonable person might accept as sufficient to support a conclusion. [Citation omitted.]" *Geer v. Eby*, 309 Kan. 182, 190, 432 P.3d 1001 (2019). In reviewing for substantial competent evidence, we do not reweigh evidence, evaluate witness credibility, or redetermine questions of fact. 309 Kan. at 191.

*Analysis*

The district court's ruling at the bench trial shows it granted an implied easement based on reservation or grant. The question now turns to whether substantial competent evidence supported that finding.

Relying on a tentative draft of the Restatement of Property, the *Van Sandt* court noted several important factors to consider when determining whether the circumstances under which land was conveyed implies an easement:

15

"'(a) whether the claimant is the conveyor or the conveyee, (b) the terms of the conveyance, (c) the consideration given for it, (d) whether the claim is made against a simultaneous conveyee, (e) the extent of necessity of the easement or the profit to the claimant, (f) whether reciprocal benefits result to the conveyor and the conveyee, (g) the manner in which the land was used prior to its conveyance, and (h) the extent to which the manner of prior use was or might have been known to the parties.'" 148 Kan. at 501.

The *Van Sandt* court also noted comment (j) to the draft, which addressed the knowledge of prior use:

"'The extent to which the manner of prior use was or might have been known to the parties. The effect of the prior use as a circumstance in implying, upon a severance of possession by conveyance, an easement or a profit results from an inference as to the intention of the parties. To draw such an inference, the prior use must have been known to the parties at the time of the conveyance, or, at least, have been within the possibility of their knowledge at the time. Each party to a conveyance is bound not merely to what he intended, but also to what he might reasonably have foreseen the other party to the conveyance expected. Parties to a conveyance may, therefore, be assumed to intend the continuance of uses known to them which are in a considerable degree necessary to the continued usefulness of the land. Also they will be assumed to know and to contemplate the continuance of reasonably necessary uses which have so altered the premises as to make them apparent upon reasonably prudent investigation. The degree of necessity required to imply an easement in favor of the conveyor is greater than that required in the case of the conveyee (see Comment b). Yet, even in the case of the conveyor, the implication from necessity will be aided by a previous use made apparent by the physical adaptation of the premises to it.'" 148 Kan. at 501.

Ogg-Daugharthy argues no Kansas case states a natural gas pipeline qualifies as a necessity that would justify the granting of an implied easement. However, the Kansas Supreme Court in *Stroda* explained that "'the reasonable use of the property in current times requires utility services.'" 288 Kan. at 728. The use must be reasonable, and "it must be necessary; the level of necessity required has been found to be less than strict

necessity, but more than inconvenience. . . . [A] lack of utilities to a new house in Kansas goes beyond mere inconvenience and begins to approach the unlivable." 288 Kan. at 728.

The natural gas pipeline is a necessity under *Stroda*'s definition. The natural gas pipeline is necessary for Carner to heat his house and to provide hot water. Ogg-Daugharthy insists Carner could have put in a propane tank to heat his house and claims the option was easy and inexpensive. The evidence contradicts this assertion. The installation of the propane tank would have cost at least $5,000. And Carner would have had to spend over $12,000 more to install a new water heater and other equipment. It also would have likely cost Carner more money each month to heat his house. The cost to move his house over to a different heating system was a high one. The natural gas pipeline had been in place, heating the house, for almost 50 years. It fills the requirement of being necessary for the enjoyment of the property.

Leslie testified Ogg-Daugharthy never would have paid that much for the 140 acres if it knew the pipeline was there. He stated Ogg-Daugharthy paid above the appraisal to give Terri her share and because Ogg-Daugharthy knew it could sell the land for more than what it paid.

The real estate contract and quitclaim deed do not mention the natural gas pipeline in its terms, although the quitclaim deed does state Carner and Terri renounced all claim to the 140 acres. Given that this is a claim for an implied easement, it is unsurprising that there is no mention of the pipeline.

Yet the record shows all parties involved knew about or should have known about the pipeline and Carner's use of it. The pipeline had existed and served the house on the 17 acres for almost 50 years. Russel Sr. and Dorothy lived in the house with their children when the pipeline was constructed. Russel Jr. helped install a portion of the pipeline. And Sandra knew about the pipeline. The members of Ogg-Daugharthy—if they

17

did not actually know about the natural gas pipeline running across the 140 acres—should have known about the pipeline. Besides the family members living there and their involvement with the pipeline, portions of the pipeline were above ground and easily visible upon inspection of the property. Yet there is no mention of capping or removing the pipeline until the letter sent to Carner after the sale of the 140 acres.

Evidence at trial showed the 17 acres and the natural gas pipeline were not a consideration in the sale of the 140 acres. Carner's involvement in selling the 140 acres was minimal. He was only involved at all because Ogg-Daugharthy's lawyer recommended Carner sign the real estate contract and quitclaim deed because Carner and Terri's divorce record did not show that their interest in the 140 acres was addressed in the property division. Carner did not participate at all in the negotiations over the sale. He signed the contract because he wanted to make sure Terri would receive her money from the sale. Even during their marriage, Carner did not consider himself an owner of the 140 acres but referred to it as Terri's inheritance. Carner did not receive any money from the sale of the 140 acres to Ogg-Daugharthy.

While the natural gas pipeline and its use by the house on the 17 acres was not discussed in the sale of the 140 acres, Carner made it clear at trial that he never intended to stop using the pipeline to heat his house. Terri also testified that she would not have agreed to sell the 140 acres if she knew it would interrupt the use of the pipeline. Terri intended for her son to own and live in the house one day. After the sale of the 140 acres, Carner continued to use the natural gas pipeline. Not until Ogg-Daugharthy sent a letter telling Carner the pipeline would be capped was there any indication that the pipeline was an issue.

The natural gas pipeline was never discussed during the sale of the 140 acres. But the parties either knew about its existence or should have known about it. The pipeline is necessary for Carner to use and enjoy his 17 acres, and the cost of any replacement would

be high. For almost 50 years, the natural gas pipeline was used to heat the house on the 17 acres. Substantial evidence supports the district court's grant of an easement.

Affirmed.